**BELL, SHIVAS & FASOLO, P.C.**
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey 07866
Tel.: 973-442-7900
Fax: 973-442-7990
*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad
and Gerry Louw

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER WENGRYN, LAILA SAYAD AND GERRY LOUW, <br><br> Plaintiffs, <br><br> – against - <br><br> AMERICAN BUSINESS CONSULTANT GROUP HOLDING, LLC; J. MICHAEL KAFES, in his official and individual capacity; DENNIS LEE, in his official and individual capacity; PROVISION CONSULTANTS CORPORATION, DBA PROVISION CORPORATION, LLC; ABC CORPS. 1-10; JOHN DOES 1-10, in their official and individual capacities, jointly and severally, <br><br> Defendants. | CIVIL ACTION NO.: 13-CV-4556 (VLB) <br><br><br> **PLAINTIFFS' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, Peter Wengryn ("Mr. Wengryn"), Laila Sayad ("Ms. Sayad") and Gerry Louw ("Mr. Louw") (collectively, Plaintiffs), by way of their Second Amended Complaint against Defendants American Business Consultant Group Holding, LLC ("Defendant ABC Group"), J. Michael Kafes ("Defendant Kafes"), Dennis Lee ("Defendant Lee"), and Provision Consultants

Corporation, DBA Provision Corporation, LLC ("Defendant Provision") (collectively, "Defendants"), jointly, severally, and in the alternative, state as follows:

## THE PARTIES

1.  Mr. Wengryn is, and at all relevant times had been, an adult individual residing in Mahwah, New Jersey. He was previously employed by Defendant ABC Group as a Chief Executive Officer at Defendant ABC Group's office located at 2 University Plaza, Suite 403, Hackensack, New Jersey 07601 during the relevant time period.

2.  Ms. Sayad is, and at all relevant times had been, an adult individual residing in Little Falls, New Jersey. She was previously employed by Defendant ABC Group as a Chief Financial Officer at Defendant ABC Group's office located at 2 University Plaza, Suite 403, Hackensack, New Jersey 07601 during the relevant time period.

3.  Mr. Louw is an adult individual residing in San Francisco, California. He was previously employed by Defendant ABC Group as a Chief Information Officer at Defendant ABC Group's office located at 2 University Plaza, Suite 403, Hackensack, New Jersey 07601 during the relevant time period.

4.  Defendant ABC Group is a Delaware limited liability company with a principal place of business at 2 University Plaza, Suite 403, Hackensack, New Jersey 07601 during the relevant time period. Defendant ABC Group also has a principal place of business in Florida, New York. Defendant does business in the State of New York.

5.  Defendant Provision is a corporation with a principal place of business located at 200 Park Avenue, Suite 1700, New York, New York 10166, and does business in a number of

states, including the State of New York. Defendant Provision has "acquired," and/or entered into a "*de facto* merger" with, Defendant ABC Group.

6. Defendant Provision's "acquisition" of, or "*de facto* merger" with, Defendant ABC Group was entered into fraudulently to escape Defendants' liability and obligations to Plaintiffs.

7. As set forth in detail below, Defendant Provision is, in reality, a "mere continuation" of Defendant ABC Group.

8. As set forth in detail below, at all times material hereto, there was a substantial continuity of the business operation of Defendant ABC Group following Defendant Provision's assumption of ownership, operation and management.

9. Defendant Kafes is, and at all relevant times has been, the President of the Board of Directors of Defendants ABC Group and Provision, and, upon information and belief, a resident of Carmel, New York. Defendant Kafes regularly conducts the business of Defendants ABC Group and Provision within the State of New York. At all relevant times, Defendant Kafes acted individually and on behalf of Defendants ABC Group and Provision. As will be set forth extensively below, the Court should disregard and pierce the corporate veil and hold Defendant Kafes liable for the breaches of contract and fraud so blatantly committed against the Plaintiffs.

10. Defendant Lee is, and at all relevant times has been, the Advisor to the Board of Directors of Defendants ABC Group and Provision, and, upon information and belief, a resident of Florida, New York. Defendant Lee regularly conducts the business of Defendants ABC Group and Provision within the State of New York. At all relevant times, Defendant Lee acted individually and on behalf of Defendants ABC Group and Provision. Defendant Lee, upon

information and belief, is the husband of Alison David, a Board Member of ABC Group and Provision.

11.     Plaintiffs' injuries arose from acts committed within this State by Defendant ABC Group, Defendant Provision, Defendant Kafes and Defendant Lee.

12.     Defendants John Does 1-10 are as yet unidentified parties who are employees and/or agents of Defendants ABC Group and Provision, and aided and/or abetted in the commission of conduct complained of herein.  As the parties engage in discovery, Plaintiffs retain the right to amend the Complaint to add these individual parties by name.

13.     Defendants ABC Corporations 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein.  As the parties engage in discovery, Plaintiffs retain the right to amend the Complaint and add these individual entities by name.

14.     Upon information and belief, each Defendant was the principal, agent, partner, joint venture, controlling shareholder of the other Defendants and/or was engaged with the other Defendants in a joint enterprise for profit, and bore such other relationships to the other Defendants so as to be liable for their conduct.

## JURISDICTION AND VENUE

15.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this matter as it arises under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

16.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal claims that they derive from a common nucleus of operative facts and from the same case or controversy.

17.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b) because substantial events giving rise to Plaintiffs' claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

18.     In or about September 2012, Mr. Wengryn, Ms. Sayad, and Mr. Louw agreed to accept employment with ABC Group – and Ms. Sayad resigned from her then current employment – based upon the express representations of Defendant Kafes that he would be personally funding ABC Group with a capital investment of one million dollars ($1,000,000.00).

19.     On or about September 13, 2012, Defendant Kafes sent an e-mail to Mr. Wengryn in which he extended guaranteed contracts of employment, on behalf of ABC Group, to Mr. Wengryn, Ms. Sayad, and Mr. Louw.

20.     Pursuant to the respective employment agreements, Defendant ABC Group and Defendant Kafes agreed to employ Mr. Wengryn for an initial minimum employment term of 6 months at an agreed-upon base salary, payable bi-weekly; Ms. Sayad (who was leaving her then current employment in reliance on Defendant Kafes' express representations to her, as well as her guaranteed written employment contract) for an initial minimum employment term of 12 months at an agreed-upon base salary, payable bi-weekly; and Mr. Louw for an initial minimum employment term of 6 months at an agreed-upon base salary, payable bi-weekly.

21.     The employment contracts also included equity vesting provisions, as had been agreed to by the parties.

22.     In his September 13, 2012 correspondence, Defendant Kafes further stated that he was "excited to get [Mr. Wengryn], [Mr. Louw] and [Ms. Sayad] on board with us *as soon as possible*." (emphasis added).

5

23.     Defendant Kafes advised Mr. Wengryn that the headquarters set-up fund would be assigned $20,000.00.

24.     Defendant Kafes further represented that he, Defendant Lee, and Alison David, a Board Member ("Ms. David"), had decided, and committed, to increasing the operating budget from $30,000.00 per month to $40,000.00 per month.

25.     Defendant Kafes specifically represented that this $40,000.00 per month budget would cover "payroll tax contributions, workers compensation insurance, and the health benefits for the executive team."

26.     Approximately six (6) days later, during the morning of September 19, 2012, Defendant Kafes had a conference call with Mr. Wengryn, Mr. Louw and Ms. Sayad during which he confirmed his desire for the Plaintiffs to start employment with ABC Group on October 1, 2012, as well as the availability of the funds.

27.     During the conference call, Ms. Sayad specifically asked Defendant Kafes to confirm the availability of funds because she needed to give notice to her then current employer on September 21, to be able to commence employment with Defendant ABC Group on October 1, 2012, as Defendant Kafes requested.

28.     During this conference call, Defendant Kafes, again, represented that he did, in fact, have the promised funding.   During this morning conference call, Defendant Kafes requested that Mr. Wengryn, Mr. Louw and Ms. Sayad be available later that same day to interview with the entire Board of Directors of ABC Group via telephone.  The conference call took place in the afternoon, and the majority of the Board, including Defendant Kafes, conducted interviews with Mr. Wengryn, Mr. Louw and Ms. Sayad.

29. Later that day, Defendant Kafes sent an e-mail to Mr. Wengryn in which he confirmed that "the Board approved bringing all three of you on board, and we're ready to execute the contracts."

30. In reliance on Defendant Kafes,' as well as the ABC Board's, express representations regarding the availability of funding and the agreed-to terms reflected in the employment agreements, Mr. Wengryn and Ms. Sayad executed their employment agreements on September 19, 2012. Mr. Louw executed his employment agreement on September 20, 2012. The respective employment agreements were all signed and executed by Defendant Kafes.

31. Also in reliance on Defendant Kafes', as well as the ABC Group Board's, representations regarding the funding and contract terms, Ms. Sayad tendered her resignation to her then current employer on September 20, 2012.

32. Pursuant to Defendant Kafes' request and approval, Plaintiffs were also asked to pay for certain business expenses, for which they were promised they would be reimbursed.

33. On September 29, 2012, for example, pursuant to Defendant Kafes' request and promise of reimbursement, Mr. Wengryn executed documents for Plaintiffs' health plans, and paid the first month's premium. Defendant Kafes promised Mr. Wengryn that he would be reimbursed for these expenses. Moreover, Plaintiffs were specifically promised a "health (medical and dental) insurance family plan *paid in full by ABC*," as part of their "Base Salary and Benefits" promised by Defendants Kafes and ABC Group, and specifically provided for in their Employment Agreements.

34. In addition, on or about October 3, 2012, pursuant to Defendant Kafes' request and approval, Mr. Wengryn signed and executed the lease for the ABC Group headquarters in Hackensack, New Jersey.

35.     To date, Defendant ABC Group and Defendant Kafes have failed to compensate Mr. Wengryn for his business expenses owed.

36.     On or about October 1, 2012, Defendant Kafes advised Mr. Wengryn, for the first time, that he did not have the funding that he had represented that he had.

37.     Mr. Wengryn was horrified to learn that Defendant Kafes had made material misrepresentations concerning the status of the funding.

38.     In response, Defendant Kafes promised Mr. Wengryn that he was guaranteed the promised funding and that he would have it by no later than October 5, 2012, in time to meet the first payroll.

39.     On or about October 8, 2012, Mr. Wengryn spoke with Defendant Kafes to confirm that he had received the funding and that the funds would be available for the first payroll.

40.     At that time, Defendant Kafes informed Mr. Wengryn that the funds did not arrive on October 5, 2012, as he had hoped, but promised that he would have the funds by no later than October 15, 2012.

41.     Mr. Wengryn told Defendant Kafes that it was unacceptable not to pay Mr. Louw and Ms. Sayad and that he needed to obtain the funds to cover their payroll.

42.     In an act of cooperation and good faith, Mr. Wengryn agreed to defer his salary until the next payroll when Mr. Wengryn expected the funds would be available, pursuant to Mr. Kafes' promise.

43.     Thereafter, Mr. Wengryn spoke numerous times a week with Defendant Kafes, asking about the status of funding. Each time, Defendant Kafes would say that the funding "is coming within the next couple of weeks."

44.     On or about November 8, 2012, Plaintiffs presented their business plan/model to Defendant Kafes, Defendant Lee and Ms. David.

45.     When Plaintiffs asked Defendant Kafes what he thought about the presentation, Defendant Kafes responded that it was "well thought out, well presented and thorough."

46.     Later that evening, Defendant Lee had a conference call with the consultants of ABC Group, during which he repeatedly praised Plaintiffs' plan.

47.     On November 12, 2012, Plaintiffs presented their business plan/model to the ABC Board.

48.     On November 15, 2012 – or three days after receiving the benefits of Plaintiffs' business plan/model – Defendant Lee, on behalf of the ABC Board, accompanied by an attorney, went to the ABC Group headquarters and informed Plaintiffs that Defendant Kafes had suddenly decided to withdraw the promised funding – despite the express terms of the written employment agreements that he had signed.

49.     At that time, Defendant Lee and the Board-appointed attorney advised Plaintiffs they had two options –*i.e.*, they could (1) take ownership of the company *without any funding*; or (2) receive one month of severance, *in lieu of the promised contract terms*, "if they would agree to go quietly." Defendant Lee and the Board-appointed attorney acknowledged that Plaintiffs were entitled to be compensated for their wages for the work performed to date, and that those wages would be paid regardless of any dispute the parties may have for payment of the remaining terms of Plaintiffs' contracts.

50.     On November 19, 2012, Plaintiffs advised Defendant ABC Group that they would like to take ownership of the company, but indicated that, to make this a feasible option, they would require funding, including their salaries, to run the company until the end of January 2013.

51.     Plaintiffs proposed that, in the event they were unable to obtain a letter of intent for funding by January 31, 2013, the majority ownership would be sold to the current owners for the fee of one dollar.  If Plaintiffs were successful in obtaining a letter of intent for funding by January 31, 2013, the amount provided during the said time period would be refunded.

52.     In the event that this option was not agreeable to the ABC Board, Plaintiffs proposed a second option, which included a severance package (salary and healthcare benefits) – in addition to their unpaid wages and expenses incurred to date.

53.     On or about November 20, 2012, the ABC Group Board sent an "Official Communication" to Plaintiffs, which contained nineteen (19) conditions that Plaintiffs were required to agree to in order for Defendant Kafes to "continue with his intention of funding the operation" – as he had promised and contractually agreed he would do three months earlier.

54.     One of the conditions that Defendant Kafes demanded Plaintiffs agree to was an agreement to waive their rights to be compensated for their time worked – *unless and until his funding arrived.*

55.     Defendant Kafes' demand was a violation of federal and state wage and hour laws.  Indeed, N.J. Stat. Ann. § 34:11-4.7 specifically provides:

> **34:11-4.7. Agreements by employer with employee**
>
> *It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act,* except to pay wages at shorter intervals than as herein provided, or to pay wages in advance. *Every agreement made in violation of this section shall be deemed to be null and void,* and the penalties in this act provided may be enforced notwithstanding such agreement; and each and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, *shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State.*

(emphasis added).  Defendant Kafes' demand was also a violation of New York wage and hour laws.

56.    Defendant Kafes also demanded (apparently in response to Plaintiffs' repeated requests that they be paid their wages owed) that he "will not be harassed with phone calls by the executives about the timing, status or source of such funding." He further demanded that Plaintiffs agree that "ABC Group *may not be able to meet* operating expenses and *salaries until such funding arrives*" – again, in violation of federal and state wage and hour laws. Defendant Kafes' demand was contrary to his prior written and verbal communications to Plaintiffs, during which he repeatedly represented that he did, in fact, have the promised funding.

57.    If Plaintiffs did not agree to give up their rights to be compensated for their time worked, as is required by federal and state law, Defendant Kafes would not continue to fund the company, as he had promised and contractually agreed three months earlier that he would do.

58.    The above-described facts make it clear that ABC Group was grossly undercapitalized and, as a result, Defendant Kafes is personally liable for the breaches of contract and fraud so blatantly committed against the Plaintiffs.

59.    After receiving Defendant Kafes' demand that they agree to waive their rights to be compensated for their time worked – again, a demand that constituted a violation of federal and state wage and hour laws – Plaintiffs consulted with legal counsel.

60.    Plaintiffs' counsel then sent a letter to Defendant ABC Group, Defendant Kafes, and Defendant Lee on November 26, 2012, reminding the company of its obligations under state and federal wage and hour laws and requesting that Defendants immediately compensate Plaintiffs for their unpaid wages and business expenses, for services rendered to date.

61.    In response, on November 27, 2012, Defendant Lee requested to speak with Plaintiffs' counsel, via telephone, to discuss the issues raised in the November 26, 2012, correspondence.

62. During this conversation, Defendant Lee, speaking on behalf of the Board of Directors of ABC Group, acknowledged that Plaintiffs were owed their unpaid wages and expenses to date.

63. Defendant Lee advised that the promised funding had not yet arrived but, in an effort to resolve the matter, Defendant Kafes would be willing to guarantee the employment agreements entered into by Plaintiffs. Plaintiffs interpreted the promises made by Defendant Lee as a commitment that Defendant Kafes would be willing to sign a personal guarantee of Plaintiffs' employment agreements.

64. Plaintiffs' counsel advised Defendant Lee that she would like to speak with Defendant Kafes to discuss.

65. The next day, November 28, 2012, Plaintiffs' counsel spoke with Defendant Kafes, who confirmed that he would be willing to personally guarantee the employment agreements entered into by Plaintiffs.

66. Plaintiffs' counsel asked Defendant Kafes if he would like to have his own attorney draft the guarantee, or if he would prefer that Plaintiffs' counsel draft it.

67. Defendant Kafes specifically requested that Plaintiffs' counsel draft the guarantee.

68. Accordingly, Defendant Kafes and Plaintiffs' counsel agreed that Plaintiffs' counsel would draft the guarantee as soon as possible, which Defendant Kafes would sign by Friday, November 30, 2012.

69. Defendant Kafes also promised that he would make the payments for Plaintiffs' health care benefits, as well as the rent, by December 5, 2012, and advised that he would use his own personal funds to do so. Indeed, in an e-mail to Ms. Sayad, dated November 28, 2012,

Defendant Kafes confirmed his promise that he would personally make the healthcare payment, as well as the rental payment, by no later than December 5, 2012.

70.     The next day, November 29, 2012, at approximately 12:07 p.m., Defendant Kafes sent an e-mail to Plaintiffs' counsel, asking whether the agreement was ready for him to sign.

71.     At approximately 3:45 p.m., Plaintiffs' counsel sent the draft guarantee to Defendant Kafes.

72.     The next day, on November 30, 2012, at approximately 5:45 p.m., Plaintiffs' counsel sent an e-mail to Defendant Kafes, asking if he had had an opportunity to review and sign the agreement.

73.     On Sunday, December 2, 2012, at 2:40 p.m., Defendant Kafes sent an e-mail (which was not received until Monday, December 3), in which he indicated that, rather than providing the personal guarantee that they had agreed upon, he decided to provide a statement to the Board, which he indicated that "ABC Group can at its discretion share with [Plaintiffs' counsel] and the executives."

74.     Upon receiving Defendant Kafes' e-mail, Plaintiffs' counsel attempted to contact him to discuss.  Plaintiffs' counsel left Defendant Kafes a voicemail message but, unfortunately, Defendant Kafes did not return Plaintiffs' counsel's call.

75.     On December 3, 2012, Defendant Lee sent a 7-page document to Plaintiffs, in which he again indicated that Defendant Kafes may or may not agree to provide the promised funding – again, promised funding that Plaintiffs relied upon in accepting employment with ABC Group.

76.     In his 7-page document, Defendant Lee also indicated that the ABC Board may or may not pay the unpaid wages owed – despite Plaintiffs' counsel's correspondence, dated

November 26, 2012, in which Plaintiffs' counsel specifically advised ABC Group that it was unlawful for the company to continue to refuse to pay Plaintiffs their unpaid wages.

77.     Defendants' failure to pay proper wages in a timely manner was made willfully, without good faith, and with reckless disregard to Plaintiffs' rights.   Plaintiffs have been significantly damaged by such failures.

78.     After receiving Defendant Lee's 7-page document, Plaintiffs' counsel sent another letter to the ABC Board, advising that if Defendant Kafes and/or the Board were interested in discussing and negotiating the final terms of the guarantee, Plaintiffs' counsel would be "happy to do" so.   Plaintiffs' counsel also indicated that, for the reasons outlined in her letter of November 26, 2012, if she did not hear back from the Board by noon the next day, December 4, Plaintiffs would have no choice but to file a wage claim to collect their unpaid wages owed.

79.     The next day, December 4, 2012, in an act of retaliation to punish Plaintiffs for seeking to pursue their rights under federal and state law to be paid their wages owed, Defendant Kafes sent a letter to the ABC Board indicating that he was withdrawing his intent to provide funding.   Indeed, in his letter, Defendant Kafes specifically stated that his decision to withdraw funding was because Plaintiffs had stated, on two occasions, that they were going to "contact the Department of Labor."

80.     Defendant Kafes' conduct constitutes retaliation and is a blatant violation of federal and state wage and hour laws.

81.     The next day, December 5, 2012, ABC Group terminated Plaintiffs' employment in retaliation for threatening to file a wage claim with the Department of Labor.

82.     Plaintiffs' termination violates federal and state wage and hour laws, as well as the New Jersey Conscientious Employee Protection Act ("CEPA"), New York's whistleblower statute (NY Labor Law § 740), and other laws.

83.     It is well-established under federal and state wage and hour laws that it is illegal for an employer to discriminate or retaliate against employees who file, or threaten to file, claims for unpaid wages.

84.     What is perhaps even more egregious – and further evidences Defendant ABC Group's discriminatory and retaliatory animus is the fact that Defendant ABC Group has attempted to characterize Mr. Wengryn's termination as "for cause." Mr. Wengryn was terminated because he attempted to protect his rights under the wage and hour laws – as well as those of his colleagues.

85.     Defendant ABC Group's attempt to characterize Mr. Wengryn's actions in pursuing his (and his colleagues') protected rights as a "for cause" termination because he "caused very material financial damage to [the] company" in protecting their rights is a blatant act of retaliation.

86.     Equally retaliatory was a threat made by Defendants, in correspondence to Ms. Sayad, dated December 6, 2012, in which they threatened to seek legal action against her if she pursued her right to collect her unpaid wages owed. Specifically, Defendants threatened Ms. Sayad that they would attempt to (falsely) claim that she should be held liable for allegedly not informing Defendants of the consequences of failing to pay Plaintiffs their unpaid wages. Defendants' threat is false – and yet another act of retaliation – for, as the above facts make clear, Plaintiffs had advised Defendants on *multiple* occasions that their failure to pay unpaid wages was unacceptable. When Defendants continued to ignore Plaintiffs, they felt they had no

choice but to contact legal counsel. Even after Defendants received Plaintiffs' counsel's November 26, 2012 correspondence, which made Defendants well aware that their conduct was a violation of the law, Defendants continued to refuse to pay Plaintiffs. Indeed, in Defendant Lee's December 3, 2012 correspondence, he continued to indicate that the ABC Board may or may not pay the unpaid wages owed.

87.    After Plaintiffs' wrongful terminations, on December 6, 2012, Defendant Lee held a telephone conference call with the sales consultants of ABC Group.

88.    During the conference call, Defendant Lee made numerous false, derogatory and defamatory statements and comments regarding Plaintiffs, as described more fully below.

89.    In or about December 2012, Defendant Provision "acquired," and/or entered into a "*de facto* merger" with, Defendant ABC Group. Defendant ABC Group is, in reality, "doing business as" Defendant Provision.

90.    Defendant Provision's "acquisition" of, or "*de facto* merger" with, Defendant ABC Group was entered into fraudulently to escape Defendants' liability and obligations to Plaintiffs.

91.    Defendant Provision is, in reality, a "mere continuation" of Defendant ABC Group.

92.    At all times material hereto, there was a substantial continuity of the business operation of Defendant ABC Group following Defendant Provision's assumption of ownership, operation and management.

93.    At all times material hereto, Defendant Provision had notice of Defendants' liabilities to Plaintiffs, including the fact that Plaintiffs had not received their full wages and, in

the case of Mr. Wengryn, *had received no wages*, for pay periods preceding Defendant Provision's "acquisition" of, or "*de facto* merger" with, Defendant ABC Group.

94. Defendant Provision did not pay the outstanding wages owed to Plaintiffs.

95. Defendant ABC Group's Website confirms that Defendant Provision is a "mere continuation" of Defendant ABC Group. Indeed, according to Defendant ABC Group's Website, Defendant ABC Group merely "changed its name" when forming Defendant Provision. (*See* printout of pages from Defendant ABC Group's Website, attached hereto as Exhibit A.)

96. Defendant ABC Group's Website also refers to Defendant Provision as the "Continuing Project." (*See* Exhibit A.)

97. Significantly, Edgard Lopez, the CEO that Defendant ABC Group hired to replace Mr. Wengryn, was the CEO of Defendant Provision. (*See* Exhibit A; *see also* printout of pages from Defendant Provision's Website, attached hereto as Exhibit B.)

98. In addition, Defendant Michael Kafes, the Board President of Defendant ABC Group, is also the Board President of Defendant Provision. (*See* Exhibits A and B.)

99. Defendant ABC Group's Website describes the company and its services as follows: "ABC Group Is Your Business Advocate To Help You Become More Efficient, Recover Lost Benefits and Overpayments, And Lower Your Overhead Costs." (*See* Exhibit A.)

100. Defendant ProVision's Website describes ProVision, and its services, in ***identical*** terms: "ProVision Corporation Is Your Business Advocate To Help You Become More Efficient, Recover Lost Benefits and Overpayments, And Lower Your Overhead Costs." (*See* Exhibit B.)

101.   In addition, both Websites contain identical "Company Profiles," which further confirm that Defendant Provision is the "mere continuation" of Defendant ABC Group. Indeed, the "Company Profile" contained on Defendant ABC Group's Website states:

OUR COMPANY PROFILE

American Business Consultant Group Holding, LLC, dba ABC Group, is the largest merchant collective in North America, currently operating in the United States and soon to open in Canada. ABC Group has trained consultants in every major market area nationwide.

Our mission is to help businesses recover monies, operate more efficiently (thus saving money) and acquire the best pricing possible for services.

We offer all commercial businesses, whether Mom and Pop stores, non-profit organizations, large chain stores, hospitals, municipalities, manufacturers, or Fortune 500 businesses, an invitation to join our collective of commercial enterprises. Our nationwide collective of businesses provides leverage with service providers, and our connections to experts in every area of operation can recover monies misspent in the thousands and even millions of dollars, depending on the volume of business.

(*See* Exhibit A.)

102.   Similarly, the "Company Profile" on Defendant Provision's Website states:

OUR COMPANY PROFILE

ProVision Corporation is the largest merchant collective in North America, currently operating in the United States and soon to open in Canada. ProVision Corporation is recruiting and training consultants for every major market area of the United States.

Our mission is to help businesses recover lost opportunities and resources, operate more efficiently (thus saving money) and acquire the best pricing possible for services. We are here to assist any and all commercial entities from profit making to non profit and from fortune 500 businesses to mom and pop stores on main street, USA. We are here for Hospitals, Municipalities, School Districts, Religious Organizations, and virtually any enterprise that pays commercial invoices for anything.

Our nationwide collective of businesses provides leverage with service providers, and our connections to experts in every area of operation can recover monies misspent in the thousands and even millions of dollars, depending on the volume of business.

(*See* Exhibit B.)

103.	In fact, the entire Websites of both Defendant ABC Group, and Defendant Provision, are virtually identical. (*See* Exhibits A and B.) Significantly, among other things, both Websites offer a "Merchant Presentation," comprised of 47 slides. The Presentations on the Websites of both Defendant ABC Group, and Defendant Provision, are comprised of the *exact same 47 slides*. (*See* Presentation on Defendant ABC Group's Website, attached hereto as Exhibit C; *see* Presentation on Defendant Provision's Website, attached hereto as Exhibit D.) The only difference between the two presentations is that the name "ABC Group" has been changed to "Provision." (*See* Exhibits C and D.)

104.	Upon information and belief, in addition to the same Board President and the same CEO, the majority of the owners of both companies are also the same. Indeed, the majority of the owners of Defendant ABC Group are also the owners of Defendant Provision.

105.	Upon information and belief, the majority of the Directors on Defendant ABC Group's Board of Directors are the also Directors on Defendant Provision's Board.

106.	Upon information and belief, Defendant Provision "employs", or contracts with, substantially the same workforce as Defendant ABC Group. That is, the majority of the consultants that represented Defendant ABC Group are now representing Defendant Provision.

107.	Upon information and belief, the majority of the vendors that Defendant ABC Group contracted with have similar contractual relations with Defendant Provision.

108.	Upon information and belief, the "pipeline" – *i.e.*, target customers and existing customers – of Defendant ABC Group are now target and existing customers of Defendant Provision.

109.	Upon information and belief, the back office IT systems that supported Defendant ABC Group are now supporting Defendant Provision in the same manner. (*See* Exhibit B, which

states, in relevant part: "Provision Corporation has been over three years in the planning. Our IT department has been in place for that entire time and has been programming our rather complex computer system and back offices to keep track of hundreds of thousands of clients and the three thousand team members of our consultant network and the three hundred team leaders.")

110. Defendant ABC Group's Business Plan is the *same* as the Business Plan for Defendant Provision. This is evidenced by, among other things, the ***identical*** websites of Defendant ABC Group and Defendant Provision. (*See* Exhibits A and B.)

111. This is further evidenced by the fact that the Business Plan that Defendant Lee presented to ABC Group's Board of Directors in 2012, which includes 3,300 consultants, is, identical to the Business Plan outlined on Defendant Provision's website, which also includes 3,300 consultants. (*See* Exhibits B and E.)

112. The services that were offered by Defendant ABC Group are the same as the services that are offered by Defendant Provision. (*See* Exhibits A and B.)

113. Upon information and belief, Defendant Lee, Advisor to the Board of Directors of ABC Group, is also the Advisor to the Board of Directors of Defendant Provision.

114. In addition, Defendant Lee was the *de facto* Operating CEO of Defendant ABC Group conducting weekly sales calls with the consultants. Upon information and belief, Defendant Lee is also acting as the *de facto* Operating CEO of Defendant Provision and conducted weekly sales calls with the same consultants.

115. As a result of the above-described conduct, including their retaliatory and wrongful terminations, Plaintiffs have suffered devastating economic and emotional damages.

116. Defendants have acted willfully, intentionally, maliciously, outrageously and in knowing violation of the law in refusing and failing to pay Plaintiffs' wages, compensation and

benefits owed to them. In addition, during these uncompensated hours, Plaintiffs performed work in the normal course of Defendants' business and conferred a measurable benefit upon Defendants.

117. In addition to Defendant ABC Group, Defendant Kafes was Plaintiffs' employer under the FLSA and New York and New Jersey Labor Laws. He knowingly and intentionally aided and abetted ABC Group, and acted directly and indirectly on behalf of the company, in failing to pay Plaintiffs their wages, compensation and benefits, in violation of the law. As such, they are jointly and severally responsible for all failure to pay wages due to Plaintiffs.

118. Defendant Kafes and Defendant Lee are personally liable for Plaintiffs' damages. At all times relevant to this lawsuit, Defendant Kafes and Defendant Lee were officers or owners or members or managers who controlled and personally participated in the actions of Defendants ABC Group and Provision as complained of herein.

119. Defendants devised, conducted and/or participated in a scheme, directly or indirectly, to engage in a conspiracy to wrongfully and unlawfully withhold and to fail to pay wages earned by Plaintiffs, including unreimbursed business expenses for which they were promised payment, as well as the other wrongful conduct complained of herein.

## COUNT ONE

**(VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.*)**

120. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

121. At all relevant times, Defendants have been and continue to be, an employer engaged in commerce and/or the production of goods for commerce, within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, 206(a) & 207(a). Defendants ABC

Group, Provision, Kafes and Lee, through their integrated operations as a single enterprise employing Plaintiffs, are all covered employers and jointly and severally liable under the FLSA.

122.    As set forth above, Defendants failed to pay, and continue to fail to pay, Mr. Wengryn his unreimbursed business expenses for which he was contractually promised payment, including healthcare expenses that he was promised as part of his "Base Salary and Benefits," in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

123.    Defendants knew that Mr. Wengryn was not being paid for his unreimbursed business expenses, despite the fact that they were contractually promised to him as part of his "Base Salary and Benefits," in violation of the FLSA.

124.    Defendants' repeated and intentional failure to pay Mr. Wengryn for his unreimbursed business expenses for which he was promised payment, was willful within the meaning of the FLSA, 29 U.S.C. § 255(a).  By failing to pay Mr. Wengryn his wages owed, Defendants have willfully violated, and continue to willfully violate, the FLSA.

125.    Defendants' repeated and intentional failure to pay Mr. Wengryn his unreimbursed business expenses for which he was contractually promised payment was not done in good faith within the meaning of the FLSA, 29 U.S.C. § 260.

126.    Due to Defendants' unlawful violations of the FLSA, Mr. Wengryn is entitled to recover from Defendants his unreimbursed business expenses for which he was promised payment, plus an additional equal amount as liquidated damages for Defendants' willful violations of the FLSA, as well as reasonable attorneys' fees and costs of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT TWO

### (VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW)

127. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

128. At all relevant times, Defendants were "employers" of Plaintiffs within the meaning of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-4.1(a), 56a1(g).

129. At all relevant times, Plaintiffs were "employees" of the Defendants within the meaning of the NJWHL, N.J.S.A. § 34:11-4.1(b), 56a1(h).

130. Defendants failed to pay Mr. Wengryn for his unreimbursed business expenses for which he was promised payment, in violation of the NJWHL. Defendants violated the express terms of the NJWHL, § 34:11-4.8 by failing to pay to Mr. Wengryn his unreimbursed business expenses that were indisputably and admittedly due to him.

131. Defendants knew that Mr. Wengryn was not being paid for the unreimbursed business expenses for which he was contractually promised payment, in violation of the NJWHL.

132. Defendants' repeated and intentional failure to pay Mr. Wengryn the unreimbursed business expenses for which he was promised payment was not done in good faith within the meaning of NJWHL, N.J.S.A. § 34:11-56a25.2.

133. Due to Defendants' NJWHL violations, Mr. Wengryn is entitled to recover from Defendants his unreimbursed business expenses, as well as the interest owed, and reasonable attorneys' fees and costs.

## COUNT THREE

### (UNLAWFUL RETALIATION UNDER THE FLSA)

134. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

135. As the foregoing facts and circumstances demonstrate, Defendants have violated the FLSA, 29 U.S.C. § 215(a)(3), by discharging or in any other manner discriminating against Plaintiffs in retaliation for Plaintiffs' complaints to Defendants, about not being paid for all hours worked, and for threatening to take action if they were not paid in accordance with the law.

136. Plaintiffs were within their rights and engaged in protected activity when they complained to Defendants that they were not being paid for their time worked in accordance with the federal and state wage and hour laws, and when they threatened to take action if they were not paid.

137. As a result of Plaintiffs' complaints and threats to take action, Plaintiffs were terminated from their employment with Defendant ABC Group.

138. Defendants acknowledged, in writing, that Plaintiffs were being terminated because of their complaints that they were not being paid for their time worked, and because they indicated that they would seek assistance from the Department of Labor.

139. Defendants' retaliatory actions have damaged Plaintiffs and have caused them a significant loss of income.

140. As a result of Defendants' actions, Plaintiffs are entitled to, without limitation, the payment of wages lost, including back pay and front pay, and an additional equal amount as liquidated damages, pursuant to FLSA, 29 U.S.C. § 215(a)(3).

## COUNT FOUR

## (VIOLATION OF NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT)

141. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

142.    Under New Jersey law, an employer may not retaliate against an employee because the employee "[d]iscloses . . .to a supervisor . . .an activity, policy or practice of the employer . . .that the employee reasonably believes: [] is in violation of a law or a rule or regulation promulgated pursuant to law . . ." N.J.S.A. 34:19-3(a)(1).

143.    Retaliatory action is also not permitted where the employee objects to or refuses to participate in activity that he reasonably believes is in violation of a law, rule or regulation; is fraudulent or criminal; or is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare. N.J.S.A. 34:19-3(c)(1)-(3).

144.    As the foregoing facts and circumstances demonstrate, Plaintiffs reasonably believed that Defendants' failure to pay Plaintiffs for their time worked was in violation of New Jersey state law and that it was incompatible with clear public policies of the state.

145.    As the foregoing facts and circumstances demonstrate, Defendants have violated the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-3, by discharging Plaintiffs in retaliation for their complaints to Defendants about not being paid for their time worked, and for threatening to take action if they were not paid in accordance with the law.

146.    Plaintiffs were within their rights and engaged in protected activity when they complained to Defendants that they were not being paid for their time worked in accordance with federal and state wage and hour laws, and when they indicated that they would seek assistance from the Department of Labor if they were not paid.

147.    As evidenced by the above facts, as a result of Plaintiffs' complaints and threats to take action, Defendants unlawfully retaliated against Plaintiffs and terminated their

employment. Defendants have made clear that Plaintiffs' employment was terminated because they objected to, and threatened to disclose, Defendants' violations of the law.

148. Defendants' retaliatory actions have damaged Plaintiffs and have caused them a significant loss of income.

149. As a direct, foreseeable, and proximate result of Defendants' violations of CEPA, Plaintiffs have lost and will continue to lose income and benefits, and have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiffs' damage in an amount in excess of this Court's jurisdiction and the precise amount of which will be proven at trial.

150. Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage Plaintiffs, Plaintiffs request the assessment of punitive damages against Defendants in an amount appropriate to punish and make an example of them.

## COUNT FIVE

### (ILLEGAL RETALIATION UNDER NEW YORK LABOR LAW § 215)

151. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

152. Defendants' failure to pay Plaintiffs for their time worked was in violation of New York state law and was incompatible with clear public policies of the state.

153. As the foregoing facts and circumstances demonstrate, Defendants have violated New York Labor Law § 215 by discharging Plaintiffs in retaliation for their complaints to Defendants about not being paid for their time worked, and for threatening to take action if they were not paid in accordance with the law.

154.     Plaintiffs were within their rights and engaged in protected activity when they complained to Defendants that they were not being paid for their time worked in accordance with federal and state wage and hour laws, and when they indicated that they would seek assistance from the Department of Labor if they were not paid.

155.     As evidenced by the above facts, as a result of Plaintiffs' complaints and threats to take action, Defendants unlawfully retaliated against Plaintiffs and terminated their employment. Defendants have made clear that Plaintiffs' employment was terminated because they objected to, and threatened to disclose, Defendants' violations of the law.

156.     Defendants' retaliatory actions have damaged Plaintiffs and have caused them a significant loss of income.

157.     As a direct, foreseeable, and proximate result of Defendants' violations of New York Labor Law § 215, Plaintiffs have lost and will continue to lose income and benefits, and have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiffs' damage in an amount in excess of this Court's jurisdiction and the precise amount of which will be proven at trial.

158.     Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage Plaintiffs, Plaintiffs request the assessment of punitive damages against Defendants in an amount appropriate to punish and make an example of them.

## COUNT SIX

### (BREACH OF WRITTEN EMPLOYMENT CONTRACT)

159.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

160.    Mr. Wengryn and Defendants ABC Group and Kafes entered into a written contract of employment under which Mr. Wengryn would receive an agreed-upon base salary, payable bi-weekly, as well as healthcare and other benefits, for an initial minimum employment term of six (6) months.

161.    Ms. Sayad and Defendants ABC Group and Kafes entered into a written contract of employment under which Ms. Sayad would receive an agreed-upon base salary, payable bi-weekly, as well as healthcare and other benefits, for an initial minimum employment term of twelve (12) months.

162.    Mr. Louw and Defendants ABC Group and Kafes entered into a written contract of employment under which Mr. Louw would receive an agreed-upon base salary, payable bi-weekly, as well as healthcare and other benefits, for an initial minimum employment term of six (6) months.

163.    Plaintiffs faithfully performed their duties under the contracts.

164.    In refusing to pay Mr. Wengryn's salary and health care benefits for a period of six (6) months, in addition to other compensation, benefits, equity and severance due under the contract, Defendants breached the written employment contract which they had entered with Mr. Wengryn.

165.    In refusing to pay Ms. Sayad's salary and health care benefits for a period of twelve (12) months, in addition to other compensation, benefits, equity and severance due under the contract, Defendants breached the written employment contract which they had entered with Ms. Sayad.

166.    In refusing to pay Mr. Louw's salary and health care benefits for a period of six (6) months, in addition to other compensation, benefits, equity and severance due under the

contract, Defendants breached the written employment contract which they had entered with Mr. Louw.

167.     Defendants' breach of Plaintiffs' respective employment contracts was willful.

168.     In breaching the respective written employment contracts, Defendants have caused Plaintiffs to suffer substantial economic losses.

169.     As a direct and proximate result of Defendants' breach of their contract with Mr. Wengryn, Mr. Wengryn is entitled to receive the full amount of his base salary for a period of six (6) months, as well as the value of the benefits, equity and severance he has lost as a result of Defendants' breach of their agreement with Mr. Wengryn.

170.     As a direct and proximate result of Defendants' breach of their contract with Ms. Sayad, Ms. Sayad is entitled to receive the full amount of her base salary for a period of twelve (12) months, as well as the value of the benefits, equity and severance she has lost as a result of Defendants' breach of their agreement with Ms. Sayad.

171.     As a direct and proximate result of Defendants' breach of their contract with Mr. Louw, Mr. Louw is entitled to receive the full amount of his base salary for a period of six (6) months, as well as the value of the benefits, equity and severance he has lost as a result of Defendants' breach of their agreement with Mr. Louw.

## COUNT SEVEN

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

172.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

173.     Plaintiffs' respective Employment Agreements each contain an implied covenant of good faith and fair dealing.

174.    As the foregoing facts and circumstances demonstrate, Defendants have not acted in good faith and have deprived Plaintiffs of their rights and benefits under their respective Employment Agreements.

175.    As a direct, foreseeable, and proximate result of Defendants' breaches, as set forth above, Plaintiffs have suffered, and continue to suffer, substantial losses in earnings, bonuses, and job benefits, and expenses incurred in the search for comparable employment, the precise amount of which will be proven at trial.

## COUNT EIGHT

### (UNJUST ENRICHMENT)

176.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

177.    Plaintiffs worked for Defendants under the promise and expectation that they would be paid for all hours worked and in accordance with the law.

178.    Defendants received the benefit of Plaintiffs working at their place of employment.

179.    By failing to pay Mr. Wengryn his unreimbursed business expenses for which he was contractually promised payment, Defendants were enriched beyond their contractual rights.

180.    In addition, as also described above, Defendants received the benefit of Plaintiffs' business plan/model, as well as other intellectual property Plaintiffs provided to Defendants.

181.    Allowing Defendants to retain the benefit of not paying Plaintiffs for all hours worked, in accordance with the law, and the benefit of Plaintiffs' business plan/model and other intellectual property, would be unjust and in contrast to well-established common law principles.

182.     As a result of the aforementioned acts of Defendants, Defendants have been unjustly enriched by Plaintiffs' labor, and Plaintiffs have suffered and will likely continue to suffer grievous harm.

183.     Accordingly, Plaintiffs seeks damages from Defendants' retention of Mr. Wengryn's unreimbursed business expenses for which he was promised payment, in accordance with the law, as well as compensation for Plaintiffs' business plan/model, and other intellectual property, in an amount as yet to be determined after discovery and trial.

## COUNT NINE

### (FRAUDULENT INDUCEMENT)

184.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

185.     In or around September 2012, Defendant Kafes, on behalf of Defendant ABC Group, Defendant Kafes and Defendant Lee, knowingly and willfully induced Plaintiffs to agree to terms and conditions of employment and to sign their respective Employment Agreements in order to obtain the benefit of Plaintiffs' services, promising them that Defendants would honor all terms of the Agreement.  In particular, they falsely told Mr. Wengryn, Ms. Sayad and Mr. Louw that if they worked as Defendants' CEO, CFO, and CIO, respectively, and signed their respective Employment Agreements, Defendants would pay them compensation and benefits as set forth in the Employment Agreements.

186.     Defendants had no intention when they offered Plaintiffs these terms and conditions, and the Employment Agreements, to actually pay Plaintiffs the promised amounts. Instead, they intended to defraud Plaintiffs of the value of their services:  lead them to believe that payment would be coming soon, obtain the value of their services, and then breach

Defendants' promises and not pay Plaintiffs any consideration. Defendants expected and intended that Plaintiffs would rely upon their fraudulent conduct to their detriment.

187. The representations of Defendants were material and false, and Plaintiffs reasonably relied upon them.

188. Relying on Defendants' false promises and assurances, as articulated by Defendant Kafes and in the Employment Agreements, Plaintiffs entered into their respective Employment Agreements and performed over two months of full-time work for the Defendants, expecting compensation pursuant to the Agreements. In addition, Ms. Sayad gave up a job paying substantial compensation in reliance on Defendants' fraudulent promises and assurances.

189. Defendants acted willfully, intentionally, maliciously, outrageously and in knowing violation of the law when they defrauded Plaintiffs.

190. Defendants' actions amount to fraudulent inducement.

191. At all times during which Defendant Kafes fraudulently induced Plaintiffs, as described above, Defendant Kafes was acting in his capacity as the Board President of Defendant ABC Group, within the scope of his authority and in furtherance of the interests of Defendant ABC Group, and, upon information and belief, his actions and fraudulent inducements were participated in and condoned by other managers and owners of Defendant ABC Group.

192. Defendant ABC Group is, therefore, also liable for the fraudulent inducement committed by Defendant Kafes.

193. As a result of the aforementioned fraudulent acts of Defendants, Plaintiffs have suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

## COUNT TEN

## (PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE)

194.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

195.    As the foregoing facts and circumstances demonstrate, Plaintiffs relied on the promise of employment contained in their respective Employment Agreements, and on the conduct of Defendant Kafes.

196.    The promise of employment by Defendants contained in Plaintiffs' respective Employment Agreements and by the conduct of Defendant Kafes and Defendant Lee was clear and definite and was made with the intent and expectation that Plaintiffs would rely on it, and that Ms. Sayad would resign from her then current employment.

197.    Plaintiffs' reliance upon the promise of employment by Defendants was reasonable, substantial and definite.

198.    As a result of Plaintiffs' reasonable, substantial and definite reliance upon the promise of employment by Defendants, Plaintiffs suffered definite and substantial detriment, including, but not limited to, loss of employment and loss of income and benefits.

199.    As a direct and proximate result of the aforesaid actions of the Defendants, their agents, servants and employees, Plaintiffs have been and continue to be deprived of substantial salary, bonuses, employee benefits, and other compensatory and pecuniary benefits, they have incurred expenses in seeking new employment, and they have suffered loss of earning capacity, as well as other economic and emotional damages.

## COUNT ELEVEN

## (DEFAMATION)

200. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

201. As noted above, on December 6, 2012, Defendant Lee held a telephone conference call with the sales consultants of ABC Group.

202. During the conference call, Defendant Lee made numerous false, derogatory and defamatory statements and comments regarding Plaintiffs.

203. Among other false and defamatory statements made by Defendant Lee, Defendant Lee told the sales consultants that Plaintiffs had all been terminated for cause.

204. Defendant Lee also stated to the consultants that: "Something that [Plaintiffs] did was one of the dumbest things that I witness happened and it was over. The owners will take only so much harassment."

205. Defendant Lee further stated that Plaintiffs "did something I can't talk about" – "dumber than a bunch of rocks" – "it was not smart" – inferring that is what lead to their dismissal. Defendant Lee went on to insinuate that Plaintiffs had engaged in unethical or illegal conduct, which had led to their terminations.

206. Defendant Lee also made a number of false and defamatory statements regarding Plaintiffs' business plan. Among other comments, Defendant Lee told the sales consultants that Plaintiffs' plan was an "incredible betrayal of the sales team."

207. Defendant Lee also falsely stated that Plaintiffs' business plan "required more money than originally [Plaintiffs] told us."

208. These statements are false.

209. As set forth above, on November 8th, 2012, when Plaintiffs asked Defendant Kafes what he thought about Plaintiffs' presentation, Defendant Kafes responded that it was "well thought out, well presented and thorough."

210. Also on November 8th, 2012, Defendant Lee had a conference call with the consultants of ABC Group, during which he repeatedly praised Plaintiffs' business plan.

211. Additionally, several Board Members had advised Plaintiffs that the Plan "was well thought out," "a lot of effort and research went into it," and it "was a much more sophisticated plan than [the Board members] were used to."

212. Defendant Lee also falsely told the sales consultants that Plaintiffs were going to "weasel out of contracts with existing consultants." Again, this statement is demonstrably false and intended to harm Plaintiffs' business reputation.

213. Defendant Lee also falsely told the sales consultants that Plaintiffs were terminated "due to their antics and the fact that they did not perform anything that they said they would." Again, this statement is demonstrably false and intended to harm Plaintiffs' business reputation.

214. Also during the conference call, Defendant Lee told the sales consultants that Plaintiffs were "unintelligent," "jerks," and "dumb as a bunch of rocks."

215. The above-referenced comments are only some of the many false and defamatory statements made by Defendant Lee during the approximately 90-minute conference call.

216. There was no basis in fact for these statements.

217. The statements made by Defendant Lee concerning Plaintiffs were malicious, reckless and/or negligently made and had the purpose and effect of damaging and injuring Plaintiffs' good name and reputation.

218. The statements made by Defendant Lee concerning Plaintiffs were defamatory and slanderous *per se*.

219. Plaintiffs' reputations have been irreparably harmed by the defamatory statements attributed to them by Defendant Lee.

220. As the Advisor to ABC Group and Provision, Defendant Lee is individually liable to Plaintiffs, along with Defendants ABC Group and Provision, for his direct involvement and participation in the defamatory statements and accusations made against Plaintiffs.

221. Plaintiffs are entitled to recover compensatory and punitive damages from Defendants Lee, ABC Group and Provision as a result of the malicious and reckless statements and accusations made against them.

## COUNT TWELVE

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

222. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

223. The above-described acts by Defendant ABC Group, Defendant Provision, Defendant Kafes, and Defendant Lee included conduct against Plaintiffs that was extreme, outrageous, utterly intolerable, and which went beyond all bounds of decency.

224. Defendants acted intentionally or recklessly in both (a) carrying out the above-described extreme and outrageous acts and (b) causing emotional distress to Plaintiffs as a result.

225. The above-described extreme and outrageous acts by Defendants in fact caused Plaintiffs to sustain foreseeable and severe emotional distress as a result. The emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it.

Further, the conduct by Defendants was sufficiently severe to cause genuine and substantial emotional distress to average persons similarly situated.

226. Defendants ABC Group and Provision ratified and acquiesced in the above-described extreme and outrageous acts committed by Defendant Kafes and Defendant Lee.

227. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiffs have sustained damages, and will, in the future continue to sustain damages.

228. The extreme and outrageous acts by Defendants were malicious, willful and wanton, and justify an award of punitive damages.

## COUNT THIRTEEN

## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

229. This Count is pleaded as an alternative to Count Eleven.

230. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

231. Defendants acted negligently in both (a) carrying out the above-described extreme and outrageous acts and (b) causing emotional distress to Plaintiffs as a result. Defendants had a duty to act with reasonable care in their dealing with Plaintiffs, Defendants acted negligently in carrying out the above-described acts, and it was reasonably foreseeable that such acts would cause severe emotional distress to Plaintiffs as a result.

232. The above-described extreme and outrageous acts by Defendants in fact caused Plaintiffs to sustain foreseeable and severe emotional distress as a result. The emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it. Further, the conduct by Defendants was sufficiently severe to cause genuine and substantial emotional distress to average persons similarly situated.

233. Defendants ABC Group and Provision ratified and acquiesced in all the above-described extreme and outrageous acts committed by Defendant Kafes and Defendant Lee.

234. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiffs have sustained damages and will, in the future continue to sustain damages.

## COUNT FOURTEEN

## (SPOLIATION OF EVIDENCE)

235. Plaintiffs hereby repeat and reallege all of the allegations set forth above as if set forth at length herein.

236. After being served with Plaintiffs' Complaint, and after Defendant Provision filed its Motion to Dismiss, and having knowledge that the relationship between Defendant ABC Group and Defendant Provision was an issue in this lawsuit, Defendant ABC Group and Defendant Provision altered their respective websites to remove much of the relevant information contained therein.

237. After being served with the Complaint, and having knowledge of Plaintiffs' claims, Defendant ABC Group and Defendant Provision destroyed information contained on their Websites that identified the "Executive Team" of each company, as well as other information relevant to this lawsuit.

238. Previously, as Exhibits A and B make clear, Defendants' respective Websites each contained a section labeled "Executive Team." These sections of Defendants' respective Websites illustrated that the "Executive Teams" of both companies were comprised of the *same* individuals – *i.e.*, Michael Kafes, Board President, and Edgard Lopez, CEO. (*See* Exhibits A and B.)

239. Upon receiving Plaintiffs' Complaint and becoming aware that the relationship between Defendant ABC Group and Defendant Provision was relevant to the claims in this case, and particularly after Defendant Provision filed its Motion to Dismiss, making the relationship between Defendant ABC Group and Defendant Provision a central issue in this matter, Defendants had an obligation to preserve this evidence.

240. Nevertheless, Defendants knowingly and willfully destroyed and/or changed this information on their Websites, and did so with the intent to deprive Plaintiffs of their cause of action against Defendant Provision.

241. The destroyed evidence was relevant to Plaintiffs' claims in this case.

242. Defendants' conduct has interfered with Plaintiffs' ability to establish their claims.

243. As a result of Defendants' actions, Plaintiffs' ability to fully and fairly present their claims has been prejudiced, and they have, therefore, been irreparably harmed.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, assessing penalties and sanctions and awarding them:

A. Equitable damages, including but not limited to, all unpaid wages, compensation, lost wages, benefits, equity, and interest denied them;

B. Compensatory damages, including all losses resulting from Defendants' unlawful actions, including emotional distress damages;

C. Liquidated damages, for Defendants' willful violation of the FLSA;

D. Pre-judgment and post-judgment interest;

E.   Costs of suit, including reasonable attorney's fees as compensable and required under statute;

F.   Punitive damages in an amount sufficient to punish Defendants and deter others;

G.   Statutorily imposed damages; and

H.   Any such other relief deemed by the Court to be equitable and just, as provided by law.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues as permitted by law.


*Respectfully submitted,*

**BELL, SHIVAS & FASOLO, P.C.**


By: ~~Joseph J. Bell, Esq.~~
Valerie Fasolo, Esq.
(vfasolo@bsflawgroup.com)
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey 07866
Tel.: 973-442-7900
Fax: 973-442-7990

*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad
and Gerry Louw


Dated: February 11, 2014