**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER WENGRYN, LAILA SAYAD AND GERRY LOUW,<br><br>Plaintiffs,<br><br>– against -<br><br>AMERICAN BUSINESS CONSULTANT GROUP HOLDING, LLC; J. MICHAEL KAFES; DENNIS LEE; PROVISION CORPORATION, LLC; ABC CORPS. 1-10; JOHN DOES 1-10, jointly and severally,<br><br>Defendants. | CIVIL ACTION NO.: 13-CV-4556 (KBF) |

## PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

*Respectfully Submitted,*

Valerie Fasolo, Esq.
David T. Shivas, Esq.
**BELL, SHIVAS & FASOLO, P.C.**
150 Mineral Springs Drive, P.O. Box 220
Rockaway, New Jersey 07866
Tel.: 973-442-7900
Fax: 973-442-7990

*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad and
Gerry Louw

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs Peter Wengryn ("Mr. Wengryn"), Laila Sayad ("Ms. Sayad") and Gerry Louw ("Mr. Louw") (collectively, "Plaintiffs"), by and through their attorneys, respectfully submit this Rule 56.1 Statement of Undisputed Facts in Support of their Motion for Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Civil Rules for the United States District Court for the Southern District of New York.

## The Plaintiffs' Written Employment Agreements, Executed By The Defendants

1.      In or about September 2012, Mr. Wengryn, Ms. Sayad, and Mr. Louw agreed to accept employment with Defendant American Business Consultant Group Holding, LLC ("Defendant ABC Group") – and Ms. Sayad resigned from her then current employment – based upon the terms and conditions set forth in written contracts of employment, executed by Michael Kafes, the President of the Board of Directors of Defendants ABC Group and Provision Corporation, LLC ("Kafes"). (Kafes Tr., Exhibits 8, 14 and 15.[1])

2.      Pursuant to the respective Employment Agreements, Defendant ABC Group agreed to employ Mr. Wengryn for an initial minimum employment term of six (6) months at an agreed-upon annual base salary of $200,000.00, payable bi-weekly; Ms. Sayad (who was leaving her then current employment in reliance on the terms in her contract) for an initial minimum employment term of twelve (12) months at an agreed-upon annual base salary of $150,000.00, payable bi-weekly; and Mr. Louw for an initial minimum employment term of six (6) months at an agreed-upon annual base salary of $150,000.00, payable bi-weekly. (Kafes Tr., Exs. 8, 14 and 15; Kafes Tr. 91:7–92:3; 106:15–25; 256:3-257:24; 296:7-21; 298:1-24.)

---

[1] Citations to the deposition transcript of J. Michael Kafes ("Kafes"), and the exhibits thereto, are designated as "Kafes Tr.," followed by a page, or exhibit, reference. The relevant pages and exhibits from the Kafes' deposition are attached to the Certification of Valerie Fasolo, Esq. ("Fasolo Cert.") as Exhibit A.

3.      Plaintiffs were also promised a "health (medical and dental) insurance family plan paid in full by ABC," as well as other benefits, as part of their "Base Salary and Benefits" promised by Defendants, and provided for in their Agreements.  (Kafes Tr., Exs. 8, 14 and 15; Kafes Tr. 256:20-257:18.)

4.      In addition, Plaintiffs' Employment Agreements also contained severance provisions, in which Defendants agreed to pay Plaintiffs "the remaining amount of salary, benefits and bonuses due through the end of [the respective original contract terms]" if Defendants terminated Plaintiffs' employment "without cause" prior to the expiration of the original contract terms.  (Kafes Tr., Exs. 8, 14 and 15.)

5.      Under the severance provisions of Ms. Sayad's Employment Agreement, Defendants agreed to pay her "the remaining amount of salary, benefits and bonuses due through the end of this one year agreement" if Defendants terminated her employment "without cause" prior to the expiration of the original contract term.  As Ms. Sayad's contract specifically stated:

> **6)      Termination.**
>
> &ast;          &ast;          &ast;
>
> c.      In the event of Laila Anne-Marie Sayad's termination without Cause, Laila Anne-Marie Sayad or her estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this one year agreement.  ABC hereby agrees that, in the event that Laila Anne-Marie Sayad's employment is terminated for any reason other than Cause prior to the expiration of the Original One-Year Employment Term, ABC will pay Laila Anne-Marie Sayad her entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation she would have received had her employment continued through the end of the Original One-Year Employment Term.

(Kafes Tr., Ex. 14.)

6.      Similarly, under the severance provisions of Mr. Louw's Employment Agreement, Defendants agreed to pay Mr. Louw "the remaining amount of salary, benefits and bonuses due through the end of this six month agreement" if Defendants terminated his

employment "without cause" prior to the expiration of the original contract term. As Mr. Louw's contract stated:

> 6) **Termination**.
>
>     *   *   *
>
> c. In the event of Gerry Louw's termination without Cause, Gerry Louw or his estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this six month agreement. ABC hereby agrees that, in the event that Gerry Louw's employment is terminated for any reason other than Cause prior to the expiration of the Original Six Month Employment Term, ABC will pay Gerry Louw his entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation he would have received had his employment continued through the end of the Original Six Month Employment Term.

(Kafes Tr., Ex. 15.)

7. Under the severance provisions of Mr. Wengryn's Employment Agreement, Defendants agreed to pay him "the remaining amount of salary, benefits and bonuses due through the end of this six month agreement" if Defendants terminated his employment "without cause" prior to the expiration of the original contract term. As Mr. Wengryn's contract stated:

> 6) **Termination**.
>
>     *   *   *
>
> c. In the event of Peter Wengryn's termination without Cause, Peter Wengryn or his estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this six month agreement. ABC hereby agrees that, in the event that Peter Wengryn's employment is terminated for any reason other than Cause prior to the expiration of the Original Six Month Employment Term, ABC will pay Peter Wengryn his entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation he would have received had his employment continued through the end of the Original Six Month Employment Term.

(Kafes Tr., Ex. 8.)

8. Section 6(e) of Mr. Wengryn's Employment Agreements defined "Cause" as follows:

6)   **Termination**

\*   \*   \*

e.    For purposes of the Agreement, "Cause" shall mean:

(i) any [material] breach by Peter Wengryn of this Agreement, the Confidential Information between Peter Wengryn and the Company [or any other written agreement between Peter Wengryn and the Company, if such breach causes material harm to the Company;]

(ii) any [material] failure by Peter Wengryn to comply with the Company's written policies or rules, as they may be in effect from time to time during your Employment [if such failure causes material harm to the Company;]

(iii) the continued failure to perform material duties as defined by the board despite having received a written warning and 30-day opportunity to cure,

(iv) commission, conviction of, or a plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State by Peter Wengryn [if such felony is work-related, materially impairs your ability to perform services for the Company, or results in a material loss to the Company or material damage to the reputation of the Company;]

(v) Peter Wengryn's misappropriation of funds or property of the Company;

(vi) any gross or willful misconduct [resulting in a material loss to the Company or material damage to the reputation of the Company.]

(Kafes Tr., Exs. 8.)

9.    Pursuant to Defendants' request and approval, Mr. Wengryn was also asked to pay for certain business expenses, for which he was promised that he would be reimbursed. (Fasolo Cert., Ex. C; Kafes Tr. 288:6-290:5; Kafes Tr., Ex. 16.)

10.    For example, on September 29, 2012, pursuant to Defendants' request and promise of reimbursement, Mr. Wengryn executed documents for Plaintiffs' health plans, and paid the first month's premium, in the amount of $4,212.27.  (Fasolo Cert., Ex. C; Kafes Tr., Ex. 16.)

11.    Defendants promised Mr. Wengryn that he would be reimbursed for these expenses.  (Fasolo Cert., Ex. C; Kafes Tr. 288:6-290:5.)

12.    Pursuant to Defendants' request and approval, Mr. Wengryn paid for other

4

legitimate business expenses, for which he has not been reimbursed.  As Kafes testified:

Q:      Okay. Would you agree that ABC company – ABC Group owes Peter Wengryn for expenses that were not reimbursed?

A:      **Yes**.

Q:      I want to show you what has been marked as K-16.

*          *          *

Q:      Okay.  You are looking at K-16, sir?

A:      Yes.

Q:      All right.  K-16, I think it was produced in discovery.  It was --

MR. SHIVAS:  Counsel, you got one?

Q:      You have seen this before, sir?

A:      It looks familiar, yes.

Q:      Is this a list of expenses?

A:      It is.

Q:      From Peter Wengryn?

A:      Yes.

Q:      This is during the time he worked at ABC?

A:      Yes.

Q:      Are you familiar with any of these specific items?

A:      Yes, I think I am familiar with just about all of them.

Q:      Okay.  Are they legitimate, related to the business?

A:      **Yes**.

Q:      Were they ever paid by ABC Group?

*          *          *

A:      **I don't have a recollection of them being paid, no**.

Q:      Do you have any recollection of Peter requesting them?

A:      I am sure he did.

5

Q:      Under the contract, is ABC required to pay them?

A:      **Yes**.

(Kafes Tr. 288:6-290:5.)

13.     As set forth on Mr. Wengryn's itemization of business expenses owed, the total amount of the business expenses for which Mr. Wengryn has not yet been reimbursed is $6,862.00.  (Kafes Tr., Ex. 16; Fasolo Cert., Ex. C.)

14.     In written correspondence, dated September 13, 2012, Kafes extended the contracts of employment to Mr. Wengryn, Ms. Sayad, and Mr. Louw – and specifically stated that ABC Group was "excited to get [the Plaintiffs] on board with us *as soon as possible*." (Kafes Tr., Ex. 12; Kafes Tr. 251:2-254:23.)

15.     In addition, Kafes advised that the headquarters set-up fund would be assigned $20,000.00.  (Kafes Tr., Ex. 12.)

16.     Kafes further represented that he, Defendant Dennis Lee ("Defendant Lee"), and Alison David, a Board Member ("David"), had decided, and committed, to increasing the operating budget from $30,000.00 per month to $40,000.00 per month.  (Kafes Tr., Ex. 12; Kafes Tr. 251:2-254:23.)

17.     Kafes specifically represented that this $40,000.00 per month budget would cover "payroll tax contributions, workers compensation insurance, and the health benefits for the executive team."  (Kafes Tr., Ex. 12; Kafes Tr. 251:2-254:23.)

18.     On September 19, 2012, Kafes had a conference call with Mr. Wengryn, Mr. Louw and Ms. Sayad, during which he confirmed Defendants' desire for the Plaintiffs to start employment with ABC Group on October 1, 2012.  (Fasolo Cert., Exhibits C, D and E.)

19.     Kafes also re-affirmed other express representations that Defendants had made to Plaintiffs – such as Kafes' promise that he would be funding the Company with a capital

investment of one million dollars ($1,000,000.00). (Fasolo Cert., Exs. C, D and E; Kafes Tr. 111:3–113:15.)

20.     During this litigation, Defendants have alleged that a purported organization called "Freedom Club USA" was the alleged source of the $1,000,000.00 capital investment that Kafes represented would be utilized to help fund Defendant ABC Group with. (Kafes Tr., Ex. 9; Kafes Tr. 115:16-24; 131:15-22; 139:18–141:22; 154:15-22.)

21.     During the conference call, Ms. Sayad specifically asked Kafes to confirm the availability of funds because she needed to give notice to her then current employer on September 21, 2012, to be able to commence employment with Defendant ABC Group on October 1, as Defendants requested. (Fasolo Cert., Ex. E; Kafes Tr. 111:3–113:15.)

22.     Later that day, Kafes sent correspondence to Plaintiffs in which he confirmed that "the Board approved bringing all three of you on board, and we're ready to execute the contracts." (Fasolo Cert., Ex. B.)

23.     On or about October 1, 2012, Kafes advised Mr. Wengryn, for the first time, that he did not have the funding that he had represented that he had. (Fasolo Cert., Exs. C, D and E.)

24.     In his deposition, Kafes testified that, prior to this time, he actually told Plaintiffs that he was "anticipating" that he would receive his million dollar funding before the first payroll was due – as opposed to telling them that he had, in fact, received it. (Kafes Tr. 112:4-113:12; 127:3-18.)

25.     Plaintiffs *adamantly* deny this allegation.   (Fasolo Cert., Exs. C, D and E.) Nevertheless, whether Kafes had, in fact, received his million dollar funding, or was "anticipating it" as he now claims, is immaterial to Plaintiffs' Motion for Partial Summary Judgment.  Indeed, in either case, Defendants *admit* that Plaintiffs' Employment Agreements do not state that the Agreements were, in any way, contingent on Kafes' receipt of his million dollar

funding. (Kafes Tr. 108:16-24.)

26.     Mr. Wengryn was horrified to learn that Kafes had made material misrepresentations concerning the status of the funding. (Fasolo Cert., Exs. C, D and E; Kafes Tr. 336:14-24.)

27.     In response, Kafes promised Mr. Wengryn that he was guaranteed the promised funding and that he would have it by no later than October 5, 2012, in time to meet the first payroll. (Fasolo Cert., Exs. C, D and E.)

28.     On or about October 8, 2012, Mr. Wengryn spoke with Kafes to confirm that he had received the funding and that the funds would be available for the first payroll. (Fasolo Cert., Exs. C, D and E.)

29.     At that time, Kafes informed Mr. Wengryn that the funds did not arrive on October 5, 2012, as he had hoped, but promised that he would have the funds by no later than October 15, 2012. (Fasolo Cert., Exs. C, D and E.)

30.     Mr. Wengryn told Kafes that it was unacceptable not to pay Mr. Louw and Ms. Sayad, and that Defendants needed to cover their payroll. (Fasolo Cert., Exs. C, D and E.)

31.     In an act of cooperation and good faith, Mr. Wengryn agreed to defer his salary until the next payroll when Mr. Wengryn expected the funds would be available, pursuant to Kafes' promise. (Fasolo Cert., Exs. C, D and E.)

32.     Thereafter, Mr. Wengryn spoke numerous times a week with Kafes, inquiring as to the status of funding. (Fasolo Cert., Exs. C, D and E; Kafes Tr. 218:19-24; 336:14-24; 339:8-20.)

33.     Each time, Kafes would represent that the funding "is coming within the next couple of weeks." (Fasolo Cert., Exs. C, D and E.)

34.     On or about November 8, 2012, Plaintiffs presented their business plan/model to

Kafes, Defendant Lee and David.  (Fasolo Cert., Exs. C, D and E.)

35.    Kafes praised Plaintiffs' business plan/model to Plaintiffs, and commended that it was "well thought out, well presented and thorough."  (Fasolo Cert., Exs. C, D and E.)

36.    Later that evening, a conference call was held with the consultants of ABC Group, during which Plaintiffs' plan was, again, praised.  (Fasolo Cert., Exs. C, D and E.)

37.    On November 12, 2012, Plaintiffs presented their business plan/model to the Board of Directors of ABC Group.  (Fasolo Cert., Exs. C, D and E.)

38.    On November 15, 2012 – or *three days after receiving the benefits of Plaintiffs' business plan/model* – Defendants informed Plaintiffs that Kafes had suddenly decided to withdraw the promised funding and, in essence, terminate the Plaintiffs' contracts – despite the express terms of the written employment agreements that Defendants had signed.  (Fasolo Cert., Exs. C, D and E.)

39.    On or about November 20, 2012, Defendants sent an "Official Communication" to Plaintiffs, which contained nineteen (19) conditions that Plaintiffs were required to agree to in order for Kafes to "continue with his intention of funding the operation" – as Kafes had promised he would do three months earlier.  (Kafes Tr., Ex. 17.)

40.    One of the conditions that Defendants demanded Plaintiffs agree to was an agreement to waive their rights to be compensated for their time worked – *unless and until Kafes' funding arrived.*  (Kafes Tr., Ex. 17.)

41.    Defendants also demanded that Defendants "will not be harassed with phone calls by the executives about the timing, status or source of such funding."  (Kafes Tr., Ex. 17.)

42.    Defendants further demanded that Plaintiffs agree that "ABC Group *may not be able to meet* operating expenses and *salaries until such funding arrives.*"  (Kafes Tr., Ex. 17.)

43.    If Plaintiffs did not agree to give up their rights to be compensated for their time

worked, Kafes would not continue to fund the Company, as he had promised three months earlier that he would do. (Kafes Tr., Ex. 17.)

44.     After receiving Defendants' demand that Plaintiffs agree to waive their right to be compensated for their time worked, Plaintiffs consulted with legal counsel. (Fasolo Cert., Exs. C, D and E.)

45.     Plaintiffs' counsel then sent a letter to Defendants on November 26, 2012, reminding Defendants of their obligations under state and federal wage and hour laws and requesting that they compensate Plaintiffs for their unpaid wages and business expenses, for services rendered to date. (Fasolo Cert., Exs. C, D and E; Kafes Tr. 335:3-336:18.)

46.     On December 3, 2012, Defendant Lee sent a communication to Plaintiffs, in which he again indicated that Kafes may or may not agree to provide the promised funding. (Fasolo Cert., Exs. C, D and E.)

47.     In this document, Defendant Lee also indicated that Defendant ABC Group may or may not pay the unpaid wages owed – despite Plaintiffs' counsel's correspondence, dated November 26, 2012, in which Plaintiffs' counsel specifically advised Defendants that it was unlawful for them to continue to refuse to pay Plaintiffs their unpaid wages. (Fasolo Cert., Exs. C, D and E.)

48.     After receiving Defendant Lee's communication, Plaintiffs' counsel sent another letter to Defendants. (Fasolo Cert., Exs. C, D and E.)

49.     Plaintiffs' counsel indicated that, for the reasons outlined in her letter of November 26, 2012, if she did not hear back from Defendants by the next day, December 4, 2012, Plaintiffs would have no choice but to file a wage claim to collect their unpaid wages owed. (Fasolo Cert., Exs. C, D and E.)

50.     The next day, December 4, 2012, Kafes sent a letter to the ABC Board indicating

that he was withdrawing his intent to provide funding.  (Kafes Tr., Ex. 18; Kafes Tr. 265:15-24.)

51.     In his letter, Kafes specifically stated that his decision to withdraw funding was because Plaintiffs had stated, on two occasions, that they were going to "contact the Department of Labor" if they were not paid in accordance with the law.  (Kafes Tr., Ex. 18; Kafes Tr. 275:7-22.)

52.     As Kafes specifically stated in his written correspondence, withdrawing his funding of ABC Group:

> By threatening to contact the Department of Labor, twice, the executives through their lawyer are threatening to force a company they know is broke, into ceasing its operations.  Executives of a company are supposed to be looking out for the company's best interest and the interest of its shareholders, not their personal salaries.  Now that I understand that their hearts and loyalties are to themselves first, and to the company and its owners second or worse, I certainly don't want the company to be run by them.

(Kafes Tr., Ex. 18).

53.     In addition, Kafes further confirmed, during his deposition, that the reason for Mr. Wengryn's termination was because he attempted to pursue his (and his colleagues') protected rights:

> Q:     Okay.  So you were telling the Board that [Mr. Wengryn's] not looking out for the best interests of the company, because he's demanding he gets paid.  Right?
>
> A:     The company was broke.
>
> Q:     Yup.
>
> A:     So if we paid him, we would have to close our doors.
>
> Q:     Right.
>
> A:     That's pretty much it.
>
> Q:     Were you –
>
> A:     I am not – I am not implying about the legality of things or not.  I am just – I was just basically saying that if we paid him, that's it, the company is broke, we are going – you know, going belly up.

(Kafes Tr. 275:7-22.)

54.     The next day, December 5, 2012, Defendants terminated Plaintiffs' employment.
(Kafes Tr., Exs. 19, 20 and 21.)

55.     It is undisputed that Ms. Sayad and Mr. Louw were terminated "without cause."
In his deposition, Kafes *admitted* that Ms. Sayad and Mr. Louw were terminated "without cause"
and *admitted* that Ms. Sayad and Mr. Louw are entitled to the severance amounts promised in
their respective contracts.  As Kafes testified:

> Q:     That's when they were fired.  Right?
>
> A:     Well, Peter was fired.  **Laila and Gerry were laid off.**
>
> Q:     Why didn't – let me just ask you.  If they were laid off and they weren't fired for cause, Laila and Gerry.  Right?
>
> A:     Right.
>
> Q:     Do you admit that ABC Group owes them the remainder of the one-year salary?
>
> A:     **I would say Gerry is owed.**
>
> Q:     Okay.  But why not Laila?
>
> A:     That's more difficult to answer.
>
> Q:     Well, was she fired for cause or was she not fired for cause?
>
> A:     **She wasn't fired for cause.**
>
> Q:     Do you know what the contract says about whether someone is fired for cause or not?
>
> A:     **Yeah.  I would say contractually, she is entitled.**
>
> Q:     Okay.  She is entitled per her employment contract?
>
> A:     **Yes.**
>
> Q:     And Gerry is, as well?
>
> A:     **Yes.**

(Kafes Tr., 294:14-295:13; 302:11-304:1; 334:7-21.)

56.     As a result of Defendants' breach, Plaintiffs have suffered devastating economic and other damages.  (Fasolo Cert., Exs. C, D and E.)

57.     Defendants failed to pay Mr. Wengryn *any* portion of his salary during his employment with Defendant ABC Group.   As Kafes testified, Mr. Wengryn was paid "*zero*" dollars for his services during his employment:

> Q:     Okay.  Was Mr. Wengryn paid during the time he worked at ABC Group?
>
> A:     **No.**
>
> Q:     How much, zero?
>
> A:     **Zero, yeah.**
>
> Q:     He was paid zero dollars during that time?
>
> A:     He was reimbursed – yeah, he was reimbursed for some expenses, *but he was paid zero, yes*.

(Kafes Tr. 93:21–94:3.)

58.     Defendants also failed and/or refused to pay Ms. Sayad and Mr. Louw the wages that were due to them after the first month of their employment.  (Kafes Tr. 94:8-95:7.)

59.     Ms. Sayad and Mr. Louw have not been paid the severance amounts that are owed to them pursuant to their respective contracts.  (Kafes Tr. 294:14-295:13; 296:7-297:10.)

60.     Defendants have also admitted that, by failing to pay the severance amounts owed, Defendants have breached the terms of their employment agreements with Ms. Sayad and Mr. Louw.  (Kafes Tr. 300:6-18.)

61.     Ms. Sayad and Mr. Louw are entitled to the full amounts of their respective contract terms – *i.e.*, one year of salary and health care benefits for Ms. Sayad; and six months' salary and health care benefits for Mr. Louw – less two months' salary, for which Ms. Sayad and Mr. Louw have now been paid.  For example, with respect to the damages that are owed to Mr. Louw as a result of Defendants' breach, Kafes testified:

13

Q: K-15, is this the employment agreement, as you understand it?

A: With Gerry Louw, yes.

Q: Okay.  Same thing, he was entitled to a salary of 150 per year.  Correct?

A: Yes.

Q: And this was for a one-year term?

A: I believe it was a six-month term.  Let's see.  Six months.

Q: Okay.  So it was a six-month term?  Was he terminated for cause?

A: No.

Q: He was terminated without cause?

A: **Yes**.

Q: And Mr. Louw was not paid the difference between the six-months at 150 per annum and two months he was paid.  Correct?

A: **Correct**.

Q: And it would appear from this agreement that that amount is owing to him.  Correct?

A: **Yes**.

(Kafes Tr. 298:4-24.)

62.     Pursuant to the terms of Mr. Louw's Employment Agreement, Mr. Louw is owed

$62,901.00.  Mr. Louw's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Health Care Due | Salary & Benefits Due | Total   Due w/ Interest |
|---|---|---|---|---|---|
| $75,000 | 27,692 | 47,308 | 5,000 | 52,308 | **$62,901** |

(Kafes Tr. 298:4-24; Fasolo Cert., Ex. D.)

63.     Pursuant to the terms of Ms. Sayad's Employment Agreement, Ms. Sayad is owed

$167,695.00.  Ms. Sayad's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Health Care Due | Salary & Benefits Due | Total Due w/ Interest |
|---|---|---|---|---|---|
| $150,000 | 27,692 | 122,308 | 17,148 | 139,455 | **$167,695** |

(Fasolo Cert., Ex. E; Kafes Tr. 296:1-297:10.)

64.     Although Defendants allege that there was "Cause" for Mr. Wengryn's termination, Kafes, who was Mr. Wengryn's direct supervisor and the President of the ABC Group Board of Directors, could not even recall what that alleged "Cause" was.  (Kafes Tr. 315:2-9.)

65.     In his deposition, Kafes testified that he does not know which one of the six for-cause clauses Mr. Wengryn was allegedly terminated for.  (Kafes Tr. 322:9-16.)

66.     According to Kafes, the ABC Group Board – of which he is the President – fired Mr. Wengryn, and there must have been a reason, but he is unable to articulate what the purported reason was.  Indeed, as Kafes testified:

> Q:     Okay.  So you fired him, and there must have been a reason, but you can't tell me today?
>
> A:     Correct.

(Kafes Tr. 330:9-11.)

67.     Kafes was the President of the Board of Directors, as well as Mr. Wengryn's immediate supervisor.  (Kafes Tr., Ex. 8.)

68.     Kafes admitted that he does not recall ever telling Mr. Wengryn, either in person or in writing, that he felt Mr. Wengryn's performance was lacking in any way.  (Kafes Tr. 207:10–208:15.)

69.     In their discovery responses, Defendants stated that ABC Group did not have an employee handbook, or any other written policies or rules.  (Fasolo Cert., Ex. F.)

70.     Pursuant to the terms of Mr. Wengryn's employment contract, Mr. Wengryn is owed **$89,117.00**.  Mr. Wengryn's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Expenses | Health Care Due | Salary & Benefits Due | Total Due w/ Interest |
|---|---|---|---|---|---|---|
| $100,000 | 36,923 | 63,077 | 6,862 | 4,171 | 74,110 | **$89,117** |

(Kafes Tr. 232:17-25; 256:9-257:24; 288:6-290:5; Kafes Tr., Exs. 8, 16; Fasolo Cert, Ex. C.)

71.    Defendants have admitted that the important terms of Plaintiffs' employment were set forth in their Employment Agreements.  (Kafes Tr. 183:3-25.)

72.    As set forth above, when Mr. Wengryn was hired, Defendants promised to provide him with an operating budget of $40,000 per month.  (Plaintiffs' Rule 56.1, ¶ 16; Kafes Tr. 249:8-254:2.)

73.    Despite this *written* promise, Defendants have admitted that they never fulfilled this promise and never made available to Mr. Wengryn the funds, or budget, they had promised to enable him to do his job.  (Kafes Tr. 250:2-252:7.)

74.    In his deposition, Kafes admitted that the purported violations alleged in Defendants' counterclaim – even if they did occur (which they did not) – were not violations of the Agreements.  With regard to the alleged failure to "reach out" to "former business contacts," for example, Kafes testified that this would not constitute a violation of the Agreements.  (Kafes Tr. 194:4-8.)

75.    With regard to Plaintiffs' Business Plan/Model, Kafes also admitted that Plaintiffs' Business Plan was not a breach of the Agreements either.  (Kafes Tr. 206:16-19.)

76.    In fact, Kafes admitted that he told Plaintiffs only "positive things" about their Business Plan.  (Kafes Tr. 185:5-15.)

77.    Kafes also admitted that, at the time that Plaintiffs presented their Business Plan/Model to the Board, Defendants had not paid Mr. Wengryn *any* portion of his salary. (Kafes Tr. 186:1-6.)

78.    As set forth above, Kafes admitted that there is no basis for Defendants not to pay

Ms. Sayad and Mr. Louw the severance benefits owed under the Agreements.  (Plaintiffs' Rule 56.1, at ¶ 55; Kafes Tr. 295:4-298:25.)

79.     Defendants admit that, pursuant to the terms of Plaintiffs' written employment contracts, they are obligated to pay Plaintiffs the amounts promised to them under the contracts. As Kafes testified:

> Q:     The contracts being written the way they were, did you understand that to be an obligation to pay those salaries?
>
> A:     **It's a contract, yes.**

(Kafes Tr. 115:3–6; 295:4-298:25.)

80.     Mr. Wengryn has not been paid for four months of his six-month contract.  (Kafes Tr. 232:17-25.)

*Respectfully submitted,*

**BELL, SHIVAS & FASOLO, P.C.**

By: /s/ Valerie Fasolo
Valerie Fasolo, Esq.
(vfasolo@bsflawgroup.com)
David T. Shivas, Esq.
(dshivas@bsflawgroup.com)
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey  07866
Tel.:  973-442-7900
Fax:  973-442-7990

*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad
and Gerry Louw

Dated:  March 27, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Plaintiffs' Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment to be served on Defendants on this date by having same delivered via e-mail, and regular mail, to Defendants' counsel at the following address:

> Eric M. Creizman, Esq.
> Creizman LLC
> 565 Fifth Avenue, 7th Floor
> New York, New York  10017
> *Attorneys for Defendants*

In addition, I electronically filed the foregoing using the Court's CM/ECF system, which will also send a notice of electronic filing to Mr. Creizman.


Dated:  March 27, 2015

**BELL, SHIVAS & FASOLO, P.C.**


By: /s/ Valerie Fasolo

> Valerie Fasolo, Esq.
> (vfasolo@bsflawgroup.com)
> 150 Mineral Springs Drive
> P.O. Box 220
> Rockaway, New Jersey 07866
> Tel.: 973-442-7900
> Fax:  973-442-7990

> *Attorneys for Plaintiffs*
> Peter Wengryn, Laila Sayad
> and Gerry Louw