**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETER WENGRYN, LAILA SAYAD AND
GERRY LOUW,

               Plaintiffs,

     – against -

AMERICAN BUSINESS CONSULTANT
GROUP HOLDING, LLC; J. MICHAEL
KAFES; DENNIS LEE; PROVISION
CORPORATION, LLC; ABC CORPS. 1-10;
JOHN DOES 1-10, jointly and severally,

           Defendants.

CIVIL ACTION NO.: 13-CV-4556 (KBF)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

*Respectfully Submitted,*

Valerie Fasolo, Esq.
David T. Shivas, Esq.
**BELL, SHIVAS & FASOLO, P.C.**
150 Mineral Springs Drive, P.O. Box 220
Rockaway, New Jersey 07866
Tel.: 973-442-7900
Fax: 973-442-7990

*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad and
Gerry Louw

# *TABLE OF CONTENTS*

TABLE OF AUTHORITIES ...................................................................................iii

PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................1

      The Plaintiffs' Written Employment Agreements, Executed By The Defendants...................................................................1

      Defendants' Breach Of Plaintiffs' Written Employment Agreements ...................................................................................2

      Plaintiffs Are Owed The Severance Amounts Promised In Their Respective Contracts ...............................................................6

LEGAL ARGUMENT...........................................................................................8

      POINT I – LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT ...................................................................8

      POINT II – SUMMARY JUDGMENT STANDARD FOR CONTRACT DISPUTES ..........................................................9

      POINT III – MS. SAYAD AND MR. LOUW ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT SIX BECAUSE IT IS UNDISPUTED THAT DEFENDANTS FAILED TO PAY THEM SEVERANCE OWED UNDER THEIR CONTRACTS AFTER DEFENDANTS TERMINATED THEIR EMPLOYMENT "WITHOUT CAUSE" ....................................................................10

            A. There Is A Valid Contract Between The Parties............................................10

            B. Defendants Breached The Terms Of Ms. Sayad's And Mr. Louw's Employment Agreements By Failing To Pay Them The Severance Benefits Owed – Which Defendants, Themselves, Have Admitted.......................................................11

            C. Ms. Sayad And Mr. Louw Are Entitled To Damages Resulting From Defendants' Breach.............................................................13

      POINT IV – MR. WENGRYN IS ENTITLED TO SUMMARY JUDGMENT ON COUNT SIX BECAUSE IT IS UNDISPUTED THAT DEFENDANTS FAILED TO PAY HIM SEVERANCE PAY AND OTHER BENEFITS OWED UNDER HIS CONTRACT ...............................................................................14

    A. There Is A Valid Contract Between The Parties............................................. 14

    B. Defendants Breached The Terms Of Mr. Wengryn's
       Employment Agreement When Defendants Terminated
       His Employment And Failed To Pay Him Severance
       Pay And Other Employment Benefits As Provided In
       The Agreement........................................................................................... 16

    C. Defendants Breached The Terms Of Mr. Wengryn's
       Employment Agreement When Defendants Failed
       To Reimburse Him For Business Expenses Owed ....................................... 17

    D. Mr. Wengryn Is Entitled To Damages Resulting
       From Defendants' Breach ............................................................................ 19

POINT V – PLAINTIFFS ARE ENTITLED TO SUMMARY
JUDGMENT ON EACH OF DEFENDANTS'
COUNTERCLAIMS........................................................................................... 20

    A. Defendants' Counterclaim For Breach Of Contract
       Fails, As A Matter Of Law ......................................................................... 20

    B. Defendants' Counterclaim For Implied Indemnity
       Fails, As A Matter Of Law ......................................................................... 22

    C. Defendants' Counterclaim For Contribution
       Fails, As A Matter Of Law ......................................................................... 25

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Adams v. New York State Thruway Auth.,*
    2001 WL 874785 (N.D.N.Y. March 22, 2001)...............................9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).....................................................8

*Board of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,*
    71 N.Y.2d 21 (1987)...................................................25

*Brad H. v. City of New York,*
    17 N.Y.3d 180 (2011)...................................................9

*Canet v. Gooch Ware Travelstead,*
    917 F. Supp. 969 (E.D.N.Y. 1996).....................................19

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).....................................................8

*DiScipio v. Sullivan,*
    816 N.Y.S.2d 576 (2006)................................................3

*Felty v. Graves-Humphreys Co.,*
    818 F.2d 1126 (4th Cir. 1987)..........................................9

*Flores v. Mamma Lombardis of Holbrook, Inc.,*
    942 F.Supp.2d 274 (E.D.N.Y. 2013).....................................7

*Francorp, Inc. v. Siebert,*
    126 F.Supp.2d 543 (N.D. Ill. 2000)...................................21

*Frank Felix Assoc., Ltd. v. Austin Drugs, Inc.,*
    111 F.3d 284 (2d Cir. 1997)...........................................21

*General Conference of Seventh-Day Adventists v. AON Reinsurance Agency, Inc.,*
    860 F.Supp. 983 (S.D.N.Y. 1994)...................................24, 25

*Goldman Sachs Group, Inc. v. Almah LLC,*
    924 N.Y.S.2d 87 (1st Dept. 2011)......................................9

*Guinness PLC v. Ward,*
    955 F.2d 875 (4th Cir. 1992)...........................................9

*Health-Chem Corp. v. Baker*,
    737 *F.Supp.* 770 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Invista B.V. v. E.I. Du Pont De Nemours & Co.*,
    2008 WL 4865044 (S.D.N.Y. Nov. 5, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Jafari v. Wally Findlay Galleries*,
    741 *F.Supp.* 64 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kagan v. Jacobs*,
    687 *N.Y.S.2d* 732 (2nd Dept. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Knight v. H.E. Yerkes and Assoc., Inc.*,
    675 *F.Supp.* 139 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 23

*Lawrence Dev. Corp. v. Jobin Waterproofing, Inc.*,
    562 *N.Y.S.2d* 902 (4th Dept. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*LNC Inv., Inc. v. First Fidelity Bank, N.A.*,
    935 *F.Supp.* 1333 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Livingston v. Klein*,
    684 *N.Y.S.2d* 115 (4th Dept 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 *U.S.* 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mellon Bank, N.A. v. United Bank Corp. of New York*,
    31 *F.3d* 113 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Mobil Oil Exploration & Producing Southeast, Inc. v. U.S.*,
    530 *U.S.* 604 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Natl. Market Share, Inc. v. Sterling Nat'l Bank*,
    392 *F.3d* 520 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*New York Anhydrous Ammonia Dev. Corp. v. Ciba-Geigy Corp.*,
    541 *N.Y.S.2d* 530 (2nd Dept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Nycal Corp. v. Inoco PLC*,
    988 *F. Supp.* 296 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Pan Am Corp. v. Delta Airlines, Inc.*,
    175 *B.R.* 438 (Bankr. S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*,
    782 *F.2d* 346 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*RIJ Pharm. Corp. v. Ivax Pharms., Inc.*,
    322 *F. Supp.2d* 406 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*SSDW Co. v. Feldman-Misthopoulos Assoc.*,
    542 *N.Y.S.2d* 565 (1ˢᵗ Dept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Triguero v. Consolidated Rail Corp.*,
    932 *F.2d* 95 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Weiss v. City of New York*,
    2003 WL 1621403 (S.D.N.Y. March 28, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Westbank Contracting, Inc. v. Rondout Valley Cent. Sch. Dist.*,
    847 *N.Y.S.2d* 780 (3d Dept. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Western World Ins. Co. v. Stack Oil, Inc.*,
    922 *F.2d* 118 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Zapico v. Bucyrus-Erie Co.*,
    579 *F.2d* 714 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

## STATUTES

*N.J.S.A.* 34:11-4.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

## RULES

*Fed. R. Civ. P.* 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fed. R. Civ. P.* 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*N.Y. C.P.L.R.* § 5004 (McKinney 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

## MISCELLANEOUS

*Restatement (Second) of Contracts* § 241(a) (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Restatement (Second) of Contracts* § 346 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Restatement (Second) of Contracts* § 354 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiffs Peter Wengryn ("Mr. Wengryn"), Laila Sayad ("Ms. Sayad") and Gerry Louw ("Mr. Louw") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Their Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiffs respectfully request that the Court enter an Order granting summary judgment in their favor on Count Six, Breach of Written Employment Contract, of Plaintiffs' Second Amended Complaint against Defendants American Business Consultant Group Holding, LLC ("Defendant ABC Group"), Dennis Lee ("Defendant Lee"), and Provision Corporation, LLC ("Defendant Provision") (collectively, "Defendants"). In addition, Plaintiffs respectfully request that the Court enter an Order granting summary judgment in their favor on each of Defendants' counterclaims.

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

In this case, Plaintiffs bring several causes of action against Defendants arising out of Defendants' intentional failure to pay Plaintiffs their salaries, wages, and business expenses owed, in violation of federal and state wage and hour laws; Defendants' subsequent retaliation against Plaintiffs for having complained about the violations committed by Defendants; and Defendants' breach of Plaintiffs' written contracts, as well as various promises and agreements Defendants had made to them.

The undisputed material facts are set forth in Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Plaintiffs' 56.1".). For the Court's convenience, Plaintiffs incorporate herein those undisputed facts and provide the following summary.

### The Plaintiffs' Written Employment Agreements, Executed By The Defendants

In or about September 2012, Plaintiffs agreed to accept employment with Defendant ABC Group – and Ms. Sayad resigned from her then current employment – based upon the terms and conditions set forth in written contracts of employment, executed by Michael Kafes, the President of the Board of Directors of Defendants ABC Group and Provision ("Kafes"). (Plaintiffs' 56.1, ¶ 1.)

Pursuant to the respective Employment Agreements, Defendant ABC Group agreed to employ

Mr. Wengryn for an initial minimum employment term of six (6) months at an agreed-upon base salary, payable bi-weekly; Ms. Sayad (who was leaving her then current employment in reliance on the terms in her contract) for an initial minimum employment term of twelve (12) months at an agreed-upon base salary, payable bi-weekly; and Mr. Louw for an initial minimum employment term of six (6) months at an agreed-upon base salary, payable bi-weekly. (Plaintiffs' 56.1, ¶ 2.) Plaintiffs were also promised a "health (medical and dental) insurance family plan *paid in full by ABC*," as well as other benefits, as part of their "Base Salary and Benefits" promised by Defendants, and provided for in their Agreements. In addition, Plaintiffs' Agreements also contained severance provisions, in which Defendants agreed to pay Plaintiffs "the remaining amount of salary, benefits and bonuses due through the end of [the respective original contract terms]" if Defendants terminated Plaintiffs' employment "without cause" prior to the expiration of the original contract terms. (Plaintiffs' 56.1, ¶¶ 3-4.)

Pursuant to Defendants' request and approval, Mr. Wengryn was also asked to pay for certain business expenses, for which he was promised that he would be reimbursed. (Plaintiffs' 56.1, ¶ 9.) For example, on September 29, 2012, pursuant to Defendants' request and promise of reimbursement, Mr. Wengryn executed documents for Plaintiffs' health plans, and paid the first month's premium. (Plaintiffs' 56.1, ¶ 10.) Defendants promised Mr. Wengryn that he would be reimbursed for these expenses. Pursuant to Defendants' request and approval, Mr. Wengryn paid for other legitimate business expenses, for which he has not been reimbursed. (Plaintiffs' 56.1, ¶¶ 11-13.)

**Defendants' Breach Of Plaintiffs' Written Employment Agreements**

In written correspondence, dated September 13, 2012, Kafes extended the contracts of employment to Mr. Wengryn, Ms. Sayad, and Mr. Louw – and specifically stated that ABC Group was "excited to get [the Plaintiffs] on board with us *as soon as possible*." In addition, Kafes advised Mr. Wengryn that the headquarters set-up fund would be assigned $20,000.00. Kafes further represented that he, Defendant Lee, and Alison David, a Board Member ("David"), had decided, and committed, to

increasing the operating budget from $30,000 per month to $40,000.00 per month. Kafes specifically represented that this $40,000.00 per month budget would cover "payroll tax contributions, workers compensation insurance, and the health benefits for the executive team." (Plaintiffs' 56.1, ¶¶ 14-17.)

On September 19, 2012, Kafes had a conference call with the Plaintiffs during which he confirmed Defendants' desire for the Plaintiffs to start employment with ABC Group on October 1, 2012. Kafes also re-affirmed other express representations that Defendants had made to Plaintiffs – such as Kafes' promise that he would be funding the Company with a capital investment of one million dollars ($1,000,000.00).[1]  During this call, Ms. Sayad specifically asked Kafes to confirm the availability of funds because she needed to give notice to her then current employer on September 21, 2012, to be able to commence employment with ABC Group on October 1, as Defendants requested. Later that day, Kafes sent correspondence in which he confirmed that "the Board approved bringing all three of you on board, and we're ready to execute the contracts." (Plaintiffs' 56.1, ¶¶ 18-22.)

On or about October 1, 2012, Kafes advised Mr. Wengryn, for the first time, that he did not have the funding that he had represented that he had. (Plaintiffs' 56.1, ¶ 23.) [2]  Mr. Wengryn was horrified to learn that Kafes had made material misrepresentations concerning the status of the funding. In response, Kafes promised Mr. Wengryn that he was guaranteed the promised funding and that he would have it by no later than October 5, in time to meet the first payroll. (Plaintiffs' 56.1, ¶¶ 26-27.)

On or about October 8, 2012, Mr. Wengryn spoke with Kafes to confirm that he had received

---

[1] As an aside, it should be noted that, during this litigation, Defendants have alleged that a purported organization called "Freedom Club USA" was the alleged source of the $1,000,000.00 capital investment that Kafes represented would be utilized to help fund Defendant ABC Group with. (Plaintiffs' 56.1, ¶ 20.)

[2] In his deposition, Kafes testified that, prior to this time, he actually told Plaintiffs that he was "anticipating" that he would receive his million dollar funding before the first payroll was due – as opposed to telling them that he had, in fact, received it. (Plaintiffs' 56.1, ¶ 24.)  Plaintiffs *adamantly* deny this allegation. Nevertheless, whether Kafes had, in fact, received his million dollar funding, or was "anticipating it" as he now claims, is immaterial to Plaintiffs' Motion for Partial Summary Judgment.  Indeed, in either case, Defendants *admit* that Plaintiffs' Employment Agreements do not state that the Agreements were, in any way, contingent on Kafes' receipt of his million dollar funding. (Plaintiffs' 56.1, ¶ 25.) Moreover, it is well-established, as a matter of law, that changes in market conditions or economic hardship do not excuse Defendants' performance under the contracts. *See, e.g., Health-Chem Corp. v. Baker*, 737 F. Supp. 770, 776 (S.D.N.Y. 1990) (rejecting frustration of purpose defense based on "a change in market conditions" and stating that "[q]uite a bit more is required than demonstrating a desire to avoid the consequences of a deal gone sour"); *Di Scipio v. Sullivan*, 816 N.Y.S.2d 576, 578 (3d Dept. 2006) ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, …performance of a contract is not excused.").

3

the funding and that the funds would be available for the first payroll. At that time, Kafes informed Mr. Wengryn that the funds did not arrive on October 5, 2012, as he had hoped, but promised that he would have the funds by no later than October 15. Mr. Wengryn told Kafes that it was unacceptable not to pay Mr. Louw and Ms. Sayad, and that Defendants needed to cover their payroll. In an act of cooperation and good faith, Mr. Wengryn agreed to defer his salary until the next payroll when he expected the funds would be available, pursuant to Kafes' promise. (Plaintiffs' 56.1, ¶¶ 28-31.)

Thereafter, Mr. Wengryn spoke numerous times a week with Kafes, inquiring as to the status of funding. (Plaintiffs' 56.1, ¶ 32.) Each time, Kafes would represent that the funding "is coming within the next couple of weeks." (Plaintiffs' 56.1, ¶ 33.)

On or about November 8, Plaintiffs presented their business plan/model to Kafes, Defendant Lee and David. Kafes praised Plaintiffs' business plan, and commended that it was "well thought out, well presented and thorough." Later that evening, a conference call was held with the consultants of ABC Group, during which Plaintiffs' plan was, again, praised. (Plaintiffs' 56.1, ¶¶ 34-36.)

On November 12, 2012, Plaintiffs presented their business plan/model to the Board of Directors of ABC Group. On November 15, 2012 – or *three days after receiving the benefits of Plaintiffs' business plan* – Defendants informed Plaintiffs that Kafes had suddenly decided to withdraw the promised funding and, in essence, terminate the Plaintiffs' contracts – despite the express terms of the written employment agreements that Defendants had signed. (Plaintiffs' 56.1, ¶¶ 37-38.)

On or about November 20, 2012, Defendants sent an "Official Communication" to Plaintiffs, which contained 19 conditions that Plaintiffs were required to agree to in order for Kafes to "continue with his intention of funding the operation" – as he had promised he would do 3 months earlier. One of the conditions Defendants demanded Plaintiffs agree to was an agreement to waive their right to be compensated for their time worked-*unless and until Kafes' funding arrived*. (Plaintiffs' 56.1, ¶ 39-40.)[3]

---

[3] Not only was Defendants' demand a material breach of contract, it was also a violation of federal and state wage and hour laws. *See, e.g., N.J.S.A.* § 34:11-4.7.

Defendants also demanded (apparently in response to Plaintiffs' requests that they be paid their wages owed) that they "will not be harassed with phone calls by the executives about the timing, status or source of such funding." They further demanded that Plaintiffs agree that "ABC Group *may not be able to meet* operating expenses and *salaries until such funding arrives.*" Defendants' demand was contrary to Kafes' prior written and verbal communications to Plaintiffs. If Plaintiffs did not agree to give up their rights to be compensated for their time worked, to which they were entitled under federal and state wage and hour laws, Kafes would not continue to fund the Company, as he had promised three months earlier that he would do. (Plaintiffs' 56.1, ¶¶ 41-43.)

After receiving Defendants' demand that they agree to waive their right to be compensated for their time worked, Plaintiffs consulted with legal counsel. Plaintiffs' counsel then sent a letter to Defendants on November 26, 2012, reminding them of their obligations under the wage and hour laws and requesting that they compensate Plaintiffs for their unpaid wages and business expenses, for services rendered to date. (Plaintiffs' 56.1, ¶¶ 44-45.)

On December 3, 2012, Defendant Lee sent a communication to Plaintiffs, in which he again indicated that Kafes may or may not agree to provide the promised funding. (Plaintiffs' 56.1, ¶ 46.) In this document, Defendant Lee also indicated that ABC Group may or may not pay the unpaid wages owed – despite Plaintiffs' counsel's correspondence, dated November 26, 2012, in which Plaintiffs' counsel specifically advised Defendants that it was unlawful for them to continue to refuse to pay Plaintiffs their unpaid wages. (Plaintiffs' 56.1, ¶ 47.) [4]

---

[4] Defendants failed to pay Mr. Wengryn *any* portion of his salary during his employment with Defendant ABC Group. Indeed, as Kafes testified, Mr. Wengryn was paid "*zero*" dollars for his services during his employment:

| | |
|---|---|
| Q: | Okay. Was Mr. Wengryn paid during the time he worked at ABC Group? |
| A: | **No.** |
| Q: | How much, zero? |
| A: | **Zero, yeah**. |
| Q: | He was paid zero dollars during that time? |
| A: | He was reimbursed – yeah, he was reimbursed for some expenses, **but he was paid zero, yes.** |

(Plaintiffs' 56.1, ¶ 57.) Defendants also failed and/or refused to pay Ms. Sayad and Mr. Louw the wages that were due to

After receiving this communication, Plaintiffs' counsel sent another letter to Defendants. Plaintiffs' counsel indicated that, for the reasons outlined in her letter of November 26, 2012, if she did not hear back from Defendants by the next day, December 4, Plaintiffs would have no choice but to file a wage claim to collect their unpaid wages owed. (Plaintiffs' 56.1, ¶¶ 48-49.)

The next day, December 4, 2012, in an act of retaliation to punish Plaintiffs for seeking to pursue their rights to be paid their wages owed, Kafes sent a letter to the ABC Board indicating that he was withdrawing his intent to provide funding. Indeed, in his letter, Kafes specifically stated that *his decision to withdraw funding was because Plaintiffs had stated, on two occasions, that they were going to "contact the Department of Labor."* (Plaintiffs' 56.1, ¶¶ 50-52.) The next day, December 5, 2012, Defendants terminated Plaintiffs' employment. (Plaintiffs' 56.1, ¶ 54.)

## Plaintiffs Are Owed The Severance Amounts Promised In Their Respective Contracts

It is undisputed that Ms. Sayad and Mr. Louw were terminated "without cause." Indeed, in his deposition, Kafes *admitted* that Ms. Sayad and Mr. Louw were terminated "without cause" and *admitted* that Ms. Sayad and Mr. Louw are entitled to the severance amounts promised in their respective contracts. As Kafes testified:

> Q:  That's when they were fired. Right?
>
> A:  Well, Peter was fired. **Laila and Gerry were laid off.**
>
> Q:  Why didn't – let me just ask you. If they were laid off and they weren't fired for cause, Laila and Gerry. Right?
>
> A:  Right.
>
> Q:  Do you admit that ABC Group owes them the remainder of the one-year salary?
>
> A:  **I would say Gerry is owed.**
>
> Q:  Okay. But why not Laila?
>
> A:  That's more difficult to answer.
>
> Q:  Well, was she fired for cause or was she not fired for cause?
>
> A:  **She wasn't fired for cause.**
>
> Q:  Do you know what the contract says about whether someone is fired for cause or not?

them after the first month of their employment. (Plaintiffs' 56.1, ¶ 58.)

| A: | **Yeah. I would say contractually, she is entitled.** |
|----|----|
| Q: | Okay. She is entitled per her employment contract? |
| A: | **Yes**. |
| Q: | And Gerry is, as well? |
| A: | **Yes**. (Plaintiffs' 56.1, ¶ 55.) |

Similarly, with regard to Mr. Wengryn, the *documented* evidence, *written at the time of his termination*, shows that Defendants did not terminate Mr. Wengryn for "Cause" either. Indeed, the *documented* evidence shows that Defendants terminated Mr. Wengryn's employment because he attempted to protect his (and his colleagues') rights under the wage and hour laws – and advised Defendants, on two occasions, that he was going to seek the assistance of the Department of Labor if Defendants continued to refuse to pay Plaintiffs. (Plaintiffs' 56.1, ¶ 51.) As Kafes specifically stated, in his written correspondence, withdrawing his funding of ABC Group:

> By threatening to contact the Department of Labor, twice, the executives through their lawyer are threatening to force a company they know is broke, into ceasing its operations. Executives of a company are supposed to be looking out for the company's best interest and the interest of its shareholders, not their personal salaries. Now that I understand that their hearts and loyalties are to themselves first, and to the company and its owners second or worse, I certainly don't want the company to be run by them. (Plaintiffs' 56.1, ¶ 52).

In addition, Kafes further confirmed, during his deposition, that the reason for Mr. Wengryn's termination was because he attempted to pursue his (and his colleagues') protected rights:

| Q: | Okay. So you were telling the Board that he's not looking out for the best interests of the company, because he's demanding he gets paid. Right? |
|----|----|
| A: | ***The company was broke***. |
| Q: | Yup. |
| A: | ***So if we paid him, we would have to close our doors***. |
| Q: | Right. |
| A: | That's pretty much it. |
| Q: | Were you – |
| A: | I am not – I am not implying about the legality of things or not. I am just – ***I was just basically saying that if we paid him, that's it, the company is broke, we are going – you know, going belly up***. (Plaintiffs' 56.1, ¶ 53) [5] |

[5] Defendants' attempt to characterize Mr. Wengryn's actions in pursuing his (and his colleagues') protected rights as a "for cause" termination because he "caused material financial damage to [the] company" in protecting their rights is a blatant act of retaliation. *See, e.g., Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F.Supp.2d 274, 278 (E.D.N.Y. 2013).

As set forth below, the undisputed facts – *including Defendants' own admissions* – make clear that there was no "Cause" to terminate *any* of the Plaintiffs' employment. As a matter of law, Defendants breached their written employment agreements with Plaintiffs when they terminated their employment and failed to pay them severance pay and other employment benefits as provided in their contracts. As a result of Defendants' breach, Plaintiffs have suffered devastating economic and other damages. (Plaintiffs' 56.1, ¶ 56.)

## ARGUMENT

## I.   LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

"Summary judgment shall be granted in favor of a moving party where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Weiss v. City of New York*, 2003 WL 1621403, at *1 (S.D.N.Y. March 28, 2003) (citing *Fed. R. Civ. P.* 56(c)). Summary judgment provides a procedure whereby factually unsupported defenses – such as those raised by Defendants in the present case – can be eliminated without recourse to a costly, lengthy and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(e). Thus, to withstand the motion, the nonmovant must do more than present evidence that is merely colorable, conclusory or speculative, it must present "concrete evidence from which a reasonable juror would return a verdict in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Western World Ins. v. Stack Oil, Inc.*, 922

8

F.2d 118, 121 (2d Cir. 1990) (nonmoving party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture"). In the end, the nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

Where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is "the affirmative obligation of the trial judge to prevent factually unsupported...defenses from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); *Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir. 1992). Indeed, in the words of one New York district court: "It is a gratuitous cruelty to parties and their witnesses to put them through the ordeal of a trial [in a case such as this] when the outcome is foreordained." *Adams v. New York State Thruway Auth.*, 2001 WL 874785, at *8 (N.D.N.Y. March 22, 2001).

## II.    SUMMARY JUDGMENT STANDARD FOR CONTRACT DISPUTES

As set forth in Plaintiffs' employment agreements, the agreements are governed by New York law. Under New York law, "[a] written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H. v. City of New York,* 17 N.Y.3d 180, 185 (2011). Summary judgment is appropriate in a contract interpretation dispute "when the language of the contract provision is wholly unambiguous" or "when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Nycal Corp. v. Inoco PLC,* 988 F.Supp. 296, 298–99 (S.D.N.Y.1997) (citing *Mellon Bank, N.A. v. United Bank Corp. of New York,* 31 F.3d 113, 115–16 (2d Cir.1994)).

"The existence of ambiguity is determined by examining the 'entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed,' with the wording to be considered 'in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *Goldman Sachs Group, Inc. v. Almah LLC,* 924 N.Y.S.2d 87, 90 (1st Dept. 2011). In this

9

regard, however, the writing between the parties is the best evidence of what the parties agreed upon and a "unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement ... [is] not probative as an aid to the interpretation of the contract." *Invista B.V. v. E.I. Du Pont De Nemours & Co.,* 2008 WL 4865044 at *4 (S.D.N.Y. Nov. 5, 2008).

## III. MS. SAYAD AND MR. LOUW ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT SIX BECAUSE IT IS UNDISPUTED THAT DEFENDANTS FAILED TO PAY THEM SEVERANCE OWED UNDER THEIR CONTRACTS AFTER DEFENDANTS TERMINATED THEIR EMPLOYMENT "WITHOUT CAUSE"

To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach. *Nat'l Market Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir. 2004); *RIJ Pharm. Corp. v. Ivax Pharms., Inc.,* 322 F.Supp.2d 406, 412 (S.D.N.Y. 2004). "One who violates his contract with another is liable for all the direct and proximate damages which result from the violation." *Id. at 525.*

### A. There Is A Valid Contract Between The Parties

In the present case, there is no dispute that a binding written employment contract existed between Ms. Sayad and Defendant ABC Group, and also between Mr. Louw and Defendant ABC Group. Indeed, pursuant to Ms. Sayad's Employment Agreement, Defendants agreed to employ Ms. Sayad as Defendants' "Chief Financial Officer" for an initial minimum employment term of twelve (12) months. Her annual base salary was $150,000 per year, which was payable bi-weekly. Pursuant to Mr. Louw's Employment Agreement, Defendants agreed to employ Mr. Louw as Defendants' "Chief Information Officer" for an initial minimum employment term of six (6) months. His annual base salary was also $150,000 per year, which was payable bi-weekly. Ms. Sayad's and Mr. Louw's written employment contracts also included equity vesting provisions, and health benefits, as had been agreed to by the parties. (Plaintiffs' 56.1, ¶¶ 2-3.)

Under the severance provisions of Ms. Sayad's Employment Agreement, Defendants agreed to pay her "the remaining amount of salary, benefits and bonuses due through the end of this one year

agreement" if Defendants terminated her employment "without cause" prior to the expiration of the original contract term. As Ms. Sayad's contract specifically stated:

6)     **Termination**.

                          *         *         *

     c.     In the event of Laila Anne-Marie Sayad's termination without Cause, Laila Anne-Marie Sayad or her estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this one year agreement. ***ABC hereby agrees that, in the event that Laila Anne-Marie Sayad's employment is terminated for any reason other than Cause prior to the expiration of the Original One-Year Employment Term, ABC will pay Laila Anne-Marie Sayad her entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation she would have received had her employment continued through the end of the Original One-Year Employment Term.*** (Plaintiffs' 56.1, ¶ 5.)

Similarly, under the severance provisions of Mr. Louw's Employment Agreement, Defendants agreed to pay Mr. Louw "the remaining amount of salary, benefits and bonuses due through the end of this six month agreement" if Defendants terminated his employment "without cause" prior to the expiration of the original contract term. As Mr. Louw's contract stated:

6)     **Termination**.

                          *         *         *

     c.     In the event of Gerry Louw's termination without Cause, Gerry Louw or his estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this six month agreement. ***ABC hereby agrees that, in the event that Gerry Louw's employment is terminated for any reason other than Cause prior to the expiration of the Original Six Month Employment Term, ABC will pay Gerry Louw his entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation he would have received had his employment continued through the end of the Original Six Month Employment Term.*** (Plaintiffs' 56.1, ¶ 6.)

Defendants breached Ms. Sayad's and Mr. Louw's employment agreements when Defendants terminated Ms. Sayad's and Mr. Louw's employment "without cause" and failed to pay them severance pay and other benefits as provided in their contracts.

B.   ***Defendants Breached The Terms Of Ms. Sayad's And Mr. Louw's Employment Agreements By Failing To Pay Them The Severance Benefits Owed – Which Defendants, Themselves, Have Admitted***

As set forth above, pursuant to the terms of the employment agreements, Defendants agreed they would pay severance to Ms. Sayad and Mr. Louw if Defendants terminated their employment "without cause" prior to the expiration of their respective contract terms. (Plaintiffs' 56.1, ¶¶ 4-6.) It is undisputed that Ms. Sayad and Mr. Louw were terminated "without cause" prior to the expiration of their contract terms. Indeed, in his deposition, Kafes *admitted* that Ms. Sayad and Mr. Louw were terminated "without cause" and *admitted* that Ms. Sayad and Mr. Louw are entitled to the severance amounts promised in their respective employment agreements. As Kafes testified:

| | |
|---|---|
| Q: | That's when they were fired. Right? |
| A: | Well, Peter was fired. **Laila and Gerry were laid off**. |
| Q: | Why didn't – let me just ask you. If they were laid off and they weren't fired for cause, Laila and Gerry. Right? |
| A: | Right. |
| Q: | Do you admit that ABC Group owes them the remainder of the one-year salary? |
| A: | **I would say Gerry is owed**. |
| Q: | Okay. But why not Laila? |
| A: | That's more difficult to answer. |
| Q: | Well, was she fired for cause or was she not fired for cause? |
| A: | **She wasn't fired for cause**. |
| Q: | Do you know what the contract says about whether someone is fired for cause or not? |
| A: | **Yeah. I would say contractually, she is entitled.** |
| Q: | Okay. She is entitled per her employment contract? |
| A: | **Yes**. |
| Q: | And Gerry is, as well? |
| A: | **Yes**. |

(Plaintiffs' 56.1, ¶ 55.) Accordingly, pursuant to the express terms of the Agreements, *as well as Defendants' own admissions*, the termination of Ms. Sayad's and Mr. Louw's employment necessarily triggered the severance provision of their contracts. As Kafes admitted, Ms. Sayad and Mr. Louw have not been paid the severance amounts that are owed to them pursuant to their respective contracts. As Kafes also admitted, *by failing to pay the severance amounts owed, Defendants have **breached** the terms of their employment agreements* with Ms. Sayad and Mr. Louw. (Plaintiffs' 56.1, ¶¶ 59-60.)

## C. Plaintiffs Are Entitled To Damages Resulting From Defendants' Breach

Pursuant to the terms set forth in their contracts, and *pursuant to Defendants' own admissions*, Ms. Sayad and Mr. Louw are entitled to the full amounts of their respective contract terms – *i.e.*, one year of salary and health benefits for Ms. Sayad; and six months' salary and health benefits for Mr. Louw – less two months' salary, for which they have now been paid. For example, with respect to the damages that are owed to Mr. Louw as a result of Defendants' breach, Kafes testified:

Q: K-15, is this the employment agreement, as you understand it?

A: With Gerry Louw, yes.

Q: Okay. Same thing, he was entitled to a salary of 150 per year. Correct?

A: Yes.

Q: And this was for a one-year term?

A: I believe it was a six-month term. Let's see. Six months.

Q: Okay. So it was a six-month term? Was he terminated for cause?

A: No.

Q: He was terminated without cause?

A: **Yes**.

Q: And Mr. Louw was not paid the difference between the six-months at 150 per annum and two months he was paid. Correct?

A: **Correct**.

Q: And it would appear from this agreement that that amount is owing to him. Correct?

A: **Yes**. (Plaintiffs' 56.1, ¶ 61.)

Accordingly, pursuant to the terms of Mr. Louw's Employment Agreement, Mr. Louw is owed **$62,901**. (Plaintiffs' 56.1, ¶ 62.) Mr. Louw's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Health Care Due | Salary & Benefits Due | Total Due w/ Interest[6] |
|---|---|---|---|---|---|
| $75,000 | 27,692 | 47,308 | 5,000 | 52,308 | **$62,901** |

---

[6] Plaintiffs are entitled to damages arising from Defendants' breach in the form of their outstanding salary, reimbursements, and bonuses due under the Employment Agreements, in addition to the severance pay and benefits under Section Six of the Agreements. Plaintiffs are also entitled to prejudgment interest. *See Restatement (Second) of Contracts* § 354 (1981). Such interest is to be calculated at the rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004 (McKinney 1992).

Pursuant to the terms of Ms. Sayad's Employment Agreement, Ms. Sayad is owed **$167,695.00**. (Plaintiffs' 56.1, ¶ 63.) Ms. Sayad's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Health Care Due | Salary & Benefits Due | Total Due w/ Interest |
|---|---|---|---|---|---|
| $150,000 | 27,692 | 122,308 | 17,148 | 139,455 | **$167,695** |

Accordingly, Plaintiffs respectfully request that the Court enter judgment in favor of Mr. Louw and Ms. Sayad, and order that Defendants pay them the contractual severance pay and benefits to which they entitled, in the amounts of $62,901 and $167,695, respectively.

## IV. MR. WENGRYN IS ENTITLED TO SUMMARY JUDGMENT ON COUNT SIX BECAUSE IT IS UNDISPUTED THAT DEFENDANTS FAILED TO PAY HIM SEVERANCE PAY AND OTHER BENEFITS OWED UNDER HIS CONTRACT

### A. There Is A Valid Contract Between The Parties

In the present case, there is no dispute that a binding written employment contract existed between Mr. Wengryn and Defendant ABC Group. Indeed, pursuant to Mr. Wengryn's Employment Agreement, Defendants agreed to employ Mr. Wengryn as Defendants' "Chief Executive Officer" for an initial minimum employment term of six (6) months. His annual base salary was $200,000 per year, which was payable bi-weekly. Mr. Wengryn's written employment contract also included equity vesting provisions, and health benefits, as had been agreed to by the parties. (Plaintiffs' 56.1, ¶¶ 2-3.)

Under the severance provisions of Mr. Wengryn's Employment Agreement, Defendants agreed to pay him "the remaining amount of salary, benefits and bonuses due through the end of this six month agreement" if Defendants terminated his employment "without cause" prior to the expiration of the original contract term. (Plaintiffs' 56.1, ¶ 7.) As Mr. Wengryn's contract stated:

6) **Termination**.

     *   *   *

  c.  In the event of Peter Wengryn's termination without Cause, Peter Wengryn or his estate will be entitled to and receive the remaining amount of salary, benefits and bonuses due through the end of this six month agreement. ***ABC hereby agrees that, in the event that Peter Wengryn's employment is terminated for any reason other than Cause prior to the expiration of the Original Six Month Employment Term, ABC will pay Peter Wengryn his***

*entire Base Salary for the term, any and all benefits, and any and all bonuses and other incentive compensation he would have received had his employment continued through the end of the Original Six Month Employment Term.* (Plaintiffs' 56.1, ¶ 7.)

Section 6(e) of the Employment Agreement defined "Cause" as follows:

**6) Termination**

\* \* \*

e.   For purposes of the Agreement, "Cause" shall mean:

(i) any [material] breach by Peter Wengryn of this Agreement, the Confidential Information between Peter Wengryn and the Company [or any other written agreement between Peter Wengryn and the Company, if such breach causes material harm to the Company;]

(ii) any [material] failure by Peter Wengryn to comply with the Company's written policies or rules, as they may be in effect from time to time during your Employment [if such failure causes material harm to the Company;]

(iii) the continued failure to perform material duties as defined by the board despite having received a written warning and 30-day opportunity to cure,

(iv) commission, conviction of, or a plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State by Peter Wengryn [if such felony is work-related, materially impairs your ability to perform services for the Company, or results in a material loss to the Company or material damage to the reputation of the Company;]

(v) Peter Wengryn's misappropriation of funds or property of the Company;

(vi) any gross or willful misconduct [resulting in a material loss to the Company or material damage to the reputation of the Company.] (Plaintiffs' 56.1, ¶ 8.)

In applying the above explicitly-defined "Cause" criteria to this case, there can be no dispute that Defendants did not terminate Mr. Wengryn for "Cause" pursuant to its defined meaning set forth in Section 6(e)(i)-(vi).   Although Defendants allege that there was "Cause" for Mr. Wengryn's termination, Kafes, *who was Mr. Wengryn's direct supervisor and the President of the ABC Group Board of Directors*, could not even recall what that alleged "Cause" was. (Plaintiffs' 56.1, ¶ 64)  To the contrary, as discussed below, the undisputed facts make clear that there was no evidence of "Cause" to terminate Mr. Wengryn's employment – and Defendants breached their Agreement with him when they terminated his employment and failed to pay him severance pay and other employment benefits as provided in his written contract.

**B.** **Defendants Breached The Terms Of Mr. Wengryn's Employment Agreement When Defendants Terminated His Employment And Failed To Pay Him Severance Pay And Other Employment Benefits As Provided In The Agreement**

In his deposition, Kafes testified that he ***does not know*** *which one of the six for-cause clauses Mr. Wengryn was allegedly terminated for*. (Plaintiffs' 56.1, ¶ 65.) According to Kafes, the ABC Board – *of which he is the President* – fired Mr. Wengryn, and there must have been a reason, but *he is unable to articulate what the purported reason was*. Indeed, as Kafes testified:

> Q: Okay. So you fired him, and there must have been a reason, but you can't tell me today?
>
> A: Correct. (Plaintiffs' 56.1, ¶ 66.)

Applying the above explicitly-defined "Cause" criteria to this case, there can be no dispute that Defendants did not terminate Mr. Wengryn for "Cause" pursuant to its defined meaning set forth in Section 6(e)(i)-(vi). Specifically, Mr. Wengryn has not committed, been convicted of, and/or entered a plea of "guilty" or "no contest" to *any* felony – so section 6(e)(iv) is inapplicable. Likewise, Defendants have not shown that Mr. Wengryn received written notice requiring him to perform certain material duties by the Board, that he was given 30 days after such notice to obey, or that he refused to obey any such notice. (Plaintiffs' 56.1, ¶ 68.) As a result, Section 6(e)(iii) is inapplicable. There has not been any allegation that Mr. Wengryn materially failed to comply with any ***written*** policies or rules of the Company. (Indeed, in their discovery responses, Defendants stated that ABC Group did not have an employee handbook, or any other ***written*** policies or rules. (Plaintiffs' 56.1, ¶ 69.)) Accordingly, Section 6(e)(ii) is inapplicable. Mr. Wengryn has not been accused of misappropriation of funds or property of the Company. Accordingly, Section 6(e)(v) is inapplicable.

As set forth above, the *documented* evidence, *written at the time of his termination*, shows that Defendants did not terminate Mr. Wengryn for "Cause." Indeed, the *documented* evidence shows that Defendants terminated Mr. Wengryn's employment because he attempted to protect his (and his colleagues') rights under the wage and hour laws – and advised Defendants, on two occasions, that he was going to seek the assistance of the Department of Labor if Defendants continued to refuse to pay

16

Plaintiffs. As Kafes specifically stated in his written correspondence, withdrawing his funding of ABC:

> By threatening to contact the Department of Labor, twice, the executives through their lawyer are threatening to force a company they know is broke, into ceasing its operations. Executives of a company are supposed to be looking out for the company's best interest and the interest of its shareholders, not their personal salaries. Now that I understand that their hearts and loyalties are to themselves first, and to the company and its owners second or worse, I certainly don't want the company to be run by them. (Plaintiffs' 56.1, ¶ 52.)

In addition, Kafes further confirmed, during his deposition, that the reason for Mr. Wengryn's termination was because he attempted to pursue his (and his colleagues') protected rights:

> Q:      Okay.  So you were telling the Board that he's not looking out for the best interests of the company, because he's demanding he gets paid.  Right?
>
> A:      *The company was broke.*
>
> Q:      Yup.
>
> A:      *So if we paid him, we would have to close our doors.*
>
> Q:      Right.
>
> A:      That's pretty much it.
>
> Q:      Were you –
>
> A:      I am not – I am not implying about the legality of things or not.  I am just – *I was just basically saying that if we paid him, that's it, the company is broke, we are going – you know, going belly up.*

(Plaintiffs' 56.1, ¶ 53.).  Defendants' attempt to characterize Mr. Wengryn's actions in pursuing Plaintiffs' protected rights as a "for cause" termination because he "caused very material financial damage to [the] company" in protecting their rights is a blatant act of retaliation.

In sum, the record evidence contradicts any notion that Mr. Wengryn was terminated for "Cause" as that term is defined in the Employment Agreement.  Accordingly, Mr. Wengryn is entitled to judgment, as a matter of law, on Count Six.

### C.      *Defendants Breached The Terms Of Mr. Wengryn's Employment Agreement When Defendants Failed To Reimburse Him For Business Expenses Owed.*

Defendants also breached the terms of Mr. Wengryn's Agreement when they failed to reimburse him for business expenses, as promised by Defendants.  Indeed, Defendants have *admitted* that, pursuant to Defendants' request and approval, Mr. Wengryn was asked to pay for certain business expenses, for which he was promised that he would be reimbursed.  For example, on September 29,

2012, pursuant to Defendants' request and promise of reimbursement, Mr. Wengryn executed documents for Plaintiffs' health plans, and paid the first month's premium, in the amount of $4,212.27. (Plaintiffs' 56.1, ¶¶ 9-11.) Pursuant to Defendants' request and approval, Mr. Wengryn paid for other legitimate business expenses, for which he has not been reimbursed. Indeed, as Kafes testified:

> Q:    Okay. Would you agree that ABC company – ABC Group owes Peter Wengryn for expenses that were not reimbursed?
>
> A:    **Yes**.
>
> Q:    I want to show you what has been marked as K-16.
>
> *     *     *
>
> Q:    Okay. You are looking at K-16, sir?
>
> A:    Yes.
>
> Q:    All right. K-16, I think it was produced in discovery. It was --
>
>         MR. SHIVAS: Counsel, you got one?
>
> Q:    You have seen this before, sir?
>
> A:    It looks familiar, yes.
>
> Q:    Is this a list of expenses?
>
> A:    It is.
>
> Q:    From Peter Wengryn?
>
> A:    Yes.
>
> Q:    This is during the time he worked at ABC?
>
> A:    Yes.
>
> Q:    Are you familiar with any of these specific items?
>
> A:    Yes, I think I am familiar with just about all of them.
>
> Q:    Okay. Are they legitimate, related to the business?
>
> A:    **Yes**.
>
> Q:    Were they ever paid by ABC Group?
>
> *     *     *
>
> A:    **I don't have a recollection of them being paid, no**.
>
> Q:    Do you have any recollection of Peter requesting them?
>
> A:    I am sure he did.
>
> Q:    Under the contract, is ABC required to pay them?
>
> A:    **Yes**. (Plaintiffs' 56.1, ¶ 12.)

Pursuant to Defendants' own admissions, Defendants promised Mr. Wengryn that he would be

reimbursed for the business expenses set forth in Exhibit 16 to Kafes' deposition transcript. As set forth on Mr. Wengryn's itemization of business expenses, the total amount of expenses for which he has not yet been reimbursed is **$6,862.00**. (Plaintiffs' 56.1, ¶¶ 12-13.) Accordingly, in addition to the severance pay and healthcare benefits that he is owed, Mr. Wengryn is also entitled to reimbursement for the business expenses owed, as a matter of law.

### D. *Mr. Wengryn Is Entitled To Damages Resulting From Defendants' Breach*

As a result of Defendants' breach of Mr. Wengryn's Employment Agreement, Mr. Wengryn is entitled to damages. *See Mobil Oil Exploration v. U.S.*, 530 U.S. 604, 629 (2000); *see also Restatement (Second) of Contracts* § 346(1) (1981). Damages also include the reimbursements and bonuses due under the contract. *See Canet v. Goach Ware Travelstead*, 917 F. Supp. 969, 982 (E.D.N.Y 1996). Mr. Wengryn, therefore, is entitled to damages arising from Defendants' breach in the form of his outstanding salary, reimbursements, and bonuses due, in addition to the severance pay and benefits promised under Section Six of the Agreement. Mr. Wengryn is also entitled to prejudgment interest. *See Restatement (Second) of Contracts* § 354 (1981). Such interest is to be calculated at the rate of nine percent per annum as set forth in New York Civil Practice Law and Rules § 5004. N.Y. C.P.L.R. § 5004 (1992).

Accordingly, pursuant to the terms of Mr. Wengryn's employment contract, Mr. Wengryn is owed the full amount of his contract term – *i.e.*, six months of salary and health care benefits – less two months of salary, for which Mr. Wengryn has now been paid. In addition, Mr. Wengryn is entitled to reimbursement of his business expenses in the amount of **$6,862.00**, as well as interest at the legal rate of 9% per annum from December 5, 2012 through the present.

Thus, pursuant to the terms of his Employment Agreement, Mr. Wengryn is owed **$89,117.00**. (Plaintiffs' 56.1, ¶ 70.) Mr. Wengryn's damages are calculated as follows:

| Contract Salary Due | Amount Received | Balance | Expenses | Health Care Due | Salary & Benefits Due | Total Due w/ Interest |
|---|---|---|---|---|---|---|
| $100,000 | 36,923 | 63,077 | 6,862 | 4,171 | 74,110 | **$89,117** |

Accordingly, Plaintiffs respectfully request that the Court enter summary judgment in favor of Mr. Wengryn on Count Six. In addition, Plaintiffs respectfully request that the Court order that Defendants pay Mr. Wengryn the contractual severance pay and benefits, unreimbursed business expenses, and interest to which he is entitled, in the amount of $89,117.

## V. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON EACH OF DEFENDANTS' COUNTERCLAIMS

### A. Defendants' Counterclaim For Breach of Contract Fails, As A Matter Of Law

In their first counterclaim, Defendants contend that Plaintiffs purportedly breached the Employment Agreements by allegedly: (1) "fail[ing] to reach out to any of their former business contacts;" (2) "creat[ing] a business model that took none of the Board's explicit directives into account," and (3) "demand[ing] an increase in operating costs from the Board." Defendants' counterclaim fails, as a matter of law, and should be dismissed for a multitude of reasons.

First, it is well-established that, under New York law, a material breach by one party excuses the other party from further performance under the contract. *See, e.g., Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 68 (S.D.N.Y. 1990). That is, where a party materially breaches, that party has failed to substantially perform the contract, and the other party is discharged from performing its obligation. *Id.* Thus, the party who is the first to violate the terms of the contract can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform. *See New York Anhydrous Ammonia Dev. Corp. v. Ciba-Geigy Corp.*, 541 N.Y.S.2d 530 (2nd Dept. 1989). A material breach occurs when one party fails to perform an essential and inducing feature of the contract. *Id.*

In the present case, Defendants materially breached the Employment Agreements with Plaintiffs by, among other things, failing to pay Plaintiffs pursuant to the terms of the Agreements.

Under the Agreements, Defendants were required to pay Plaintiffs on a bi-weekly basis. At the time of Plaintiffs' terminations, however, Mr. Wengryn *had not been paid one dollar during the entire period of his employment* – and Mr. Louw and Ms. Sayad had not been paid their wages after their first month of employment. (Plaintiffs' 56.1, ¶¶ 57-58.)

As a matter of law, Defendants' failure to pay Plaintiffs their agreed-upon wages was a material breach of the Agreements. *See, e.g., Francorp, Inc. v. Siebert*, 126 F. Supp. 2d 543, 547 (N.D. Ill. 2000) (employer's failure to pay officers and employees in a timely fashion constituted material breach of employment relationship, thereby excusing officers and employees from any obligations they had under agreements); *see also Restatement (Second) of Contracts* § 241(a) (1979). The failure to pay Plaintiffs their wages in the present case frustrates the primary purpose of the contract and therefore relieved Plaintiffs of their duty to perform. Again, at the time of Mr. Wengryn's termination, *Defendants owed him more than $44,000.00* – and Ms. Sayad and Mr. Louw were each owed more than one month of pay. Clearly, Plaintiffs were all out a substantial amount of money for a lengthy period of time. Bills, mortgages and other financial obligations weighed upon them. There is no question that Plaintiffs never agreed to work for free -- compensation was central to their Employment Agreements with Defendants. Because Defendants' failure to pay Plaintiffs constituted a material breach of the Agreements, Defendants cannot now maintain an action against Plaintiffs based on a purported subsequent failure to perform. *See Frank Felix Assoc. v. Austin Drugs,* 111 F.3d 284, 289 (2d Cir.1997) (holding that when party commits a material breach, the other party is relieved from its further performance obligations). Accordingly, Defendants' counterclaim fails, as a matter of law.

Defendants' counterclaim also fails for the additional reason that the alleged violations of which Defendants now complain *were not even obligations and/or terms under the Agreements*. Defendants have admitted that the *important* terms of Plaintiffs' employment were set forth in their Agreements. (Plaintiffs' 56.1, ¶ 71.) Nevertheless, *nowhere* do the Agreements state that Plaintiffs

were required to "reach out" to "former business clients." Similarly, **nowhere** do the Agreements state that Plaintiffs were prohibited from requesting an increase in operating costs from the Board.[7]

Moreover, in his deposition, Kafes *admitted* that the purported violations alleged in Defendants' counterclaim – even if they did occur (which they did not) – *were not violations of the Agreements*. Indeed, with regard to the alleged failure to "reach out" to "former business contacts," for example, Kafes testified that this would not constitute a violation of the Agreements. (Plaintiffs' Rule 56.1, ¶ 74.) With regard to Plaintiffs' Business Plan/Model, Kafes also admitted that Plaintiffs' Business Plan was not a breach of the Agreements either. (*Id.*, at ¶ 75.) In fact, Kafes *admitted* that he told Plaintiffs only "positive things" about their Business Plan. (*Id.*, at ¶ 76.) [8] In fact, as set forth above, Kafes admitted that there is simply no basis for Defendants not to pay Ms. Sayad and Mr. Louw the severance benefits owed under the Agreements. (*Id.*, at ¶¶ 55, 78.)

Accordingly, Plaintiffs respectfully request that the Court enter summary judgment in favor of Plaintiffs on Defendants' counterclaim for breach of contract.

## B. *Defendants' Counterclaim For Implied Indemnity Fails, As A Matter Of Law*

Contractual indemnity will be implied only when "unique special factors exist demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or when there is a generally recognized special relationship between the parties." *Knight v. H.E. Yerkes and Assoc.,* 675 F. Supp. 139, 143 (S.D.N.Y. 1987); *Peoples' Democratic Republic v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir. 1986). A party seeking to establish the "special factors" or "special relationship" necessary to support a claim for implied indemnity bears a "heavy burden."

---

[7] It should be noted, too, that, not only were Plaintiffs not prohibited from requesting an increase in operating costs, but Plaintiffs *never made any such request*. To the contrary, the *documented* evidence makes clear that it was **Defendants** who, on September 13, 2012, offered to increase the operating budget from $30,000 per month to $40,000 per month. (Plaintiffs' Rule 56.1, ¶ 16.) The *documented* evidence, as well as the admissions of Kafes, also make clear that the *only* "breach" that occurred with regard to "operating costs" *was committed by Defendants*. Specifically, as set forth above, when Mr. Wengryn was hired, Defendants promised to provide him with an operating budget of $40,000 per month. (*Id.*, ¶ 72.) Despite this *written* promise, Defendants have admitted that they never fulfilled this promise and never made available to Mr. Wengryn the funds, or budget, they had promised to enable him to do his job. (*Id.*, ¶ 73.)

[8] Kafes also admitted that, at the time that Plaintiffs presented their Business Plan/Model to the Board, Defendants had not paid Mr. Wengryn *any* portion of his salary. (Plaintiffs' Rule 56.1, ¶ 77.)

*Triguero v. Consolidated Rail Corp.*, 932 F.2d 95, 101 (2d Cir. 1991); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 722 (2d Cir. 1978). Indeed, the Second Circuit has cautioned that "indemnity is an all-or nothing approach that should be applied sparingly and purposefully by the law." *Id.*

In the present case, Defendants can neither establish unique "special factors" illustrating the intent to indemnify by Mr. Wengryn nor a "special relationship warranting indemnity." It is undisputed that there are no "unique special factors" which demonstrate that Mr. Wengryn even considered, let alone actually intended, to indemnify Defendants, nor is there anything "special" about the relationship between Defendants and Mr. Wengryn that created any type of implied indemnity obligation on the part of Mr. Wengryn.

Moreover, in a case of implied indemnity, "***where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied***." *Knight H.E. Yerkes and Assoc., Inc.*, 675 F. Supp. at 143. *See also Kagan v. Jacobs*, 687 N.Y.S.2d 732, 733 (2nd Dept. 1999) ("The predicate for common-law indemnity is vicarious liability without fault on the part of the proposed indemnitee, and it follows that a party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.") Here, the fact that Ms. Sayad and Mr. Louw sued Defendants for their own independent contractual breaches and wrongdoing, and *Defendants have acknowledged their liability for breach of their contractual responsibilities*, creates an insurmountable obstacle to any claim against Mr. Wengryn based upon a theory of implied indemnity. (Plaintiffs' 56.1, ¶¶ 55, 57-61.) Indeed, courts have specifically held that where, as here, a party has been sued and *admits liability for breach of its own contractual duties*, a claim of indemnity will not lie:

> In a case of implied indemnity, however, "where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied".... Because the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that [defendant] was not at least partially responsible for harm, for it was [defendant] that allegedly breached the contract, not [the proposed indemnitor].

*Knight v. H.E. Yerkes and Assocs, Inc.*, 675 F.Supp. at 143 [citations omitted]. *See also, LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 935 F.Supp. 1333, 1352 (S.D.N.Y. 1996) ("a third-party claim for implied

indemnification is not tenable when the plaintiff's claims against the third-party plaintiff are based upon the third-party plaintiff's own duties, acts or omissions").

Separate and apart from the foregoing, the implied contract theory of indemnity only applies "when the proposed indemnitee holds a non-delegable duty to a third party, but transfers this responsibility to the proposed indemnitor by implied agreement." *General Conf. of Seventh-Day Adventists v. Aon Reinsurance Agency, Inc.,* 860 F.Supp. 983, 986 (S.D.N.Y. 1994)  As the Court held in *Pan Am Corp. v. Delta Airlines. Inc.*, 175 B.R. 438, 516 (Bankr. S.D.N.Y. 1994), "[indemnification which is implied in contract requires that the proposed indemnitor have assumed by contract the duty - and hence the liability for its breach - of the proposed indemnitee to the plaintiff." Conversely, implied contractual indemnity is not available "when the proposed indemnitee retains responsibility for a duty it owes directly to the third party." *General Conference*, 860 F.Supp. at 986.

Here, Defendants have failed to state a claim for implied indemnity against Mr. Wengryn for the additional reason that Defendants have not alleged, and cannot allege, that they delegated exclusive responsibility to Mr. Wengryn for the duties Defendants owed to Ms. Sayad and Mr. Louw under the Employment Agreements:  the duty to pay Ms. Sayad and Mr. Louw their salaries, wages and benefits owed for services rendered.  This conclusion is underscored by the language of the Agreements themselves, as well as Kafes' own deposition testimony. *There is no question* that Mr. Wengryn never assumed by contract, or otherwise, the duty to pay the salaries, wages and benefits owed by Defendants.  Mr. Wengryn was not a party to Defendants' Agreements with Ms. Sayad and Mr. Louw and thus had no obligation to pay them for Defendants' default.

For the foregoing reasons, as a matter of law, Defendants cannot avail themselves of the doctrine of implied indemnity to absolve themselves of their own responsibility to pay Ms. Sayad and Mr. Louw for the wages and benefits owed under the Agreements.  Defendants' liability is not predicated on vicarious liability based upon their relationship to Mr. Wengryn, but upon Defendants'

own breach of the duties they owed to Ms. Sayad and Mr. Louw. Accordingly, Defendants' counterclaim fails, as a matter of law. *See, e.g., Lawrence Dev. Corp. v. Jobin Waterproofing, Inc.*, 562 N.Y.S.2d 902 (4th Dept. 1990) (holding that "because plaintiff seeks to hold defendant liable for its active negligence and breach of contract, defendant has no cause of action against [third party] based upon the theory of implied indemnity").

### C. Defendants' Counterclaim For Contribution Fails, As A Matter Of Law

New York law does not permit a party to seek contribution when the underlying liability is for breach of contract and/or other non-tort claims. *General Conf. of Seventh-Day Adventists*, 860 F.Supp. at 989; *Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 29 (1987).

Here, the economic loss resulting from Defendants' breach of contract and related claims, including Defendants' failure to pay Plaintiffs their wages owed, does not constitute injury to property, personal injury, or wrongful death within the meaning of CPLR 1401. Accordingly, Defendants may not assert a counterclaim for contribution against Mr. Wengryn and their counterclaim should be dismissed, as a matter of law. *See SSDW Co. v. Feldman–Misthopoulos Assoc.*, 542 N.Y.S.2d 565, 566 (1st Dept. 1989) ("It is immediately apparent from reading CPLR 1401, that a claim for contribution is limited to actions for 'personal injury, injury to property or wrongful death.'"); *see also Westbank Contracting v. Rondout Valley Cent. Sch..*, 847 N.Y.S.2d 780, 783 (3d Dept. 2007) (stating that a party cannot seek contribution where the alleged tort is "essentially a breach of contract"); *Livingston v. Klein*, 684 N.Y.S.2d 115 (4th Dept. 1998) ("Contribution may not be sought where the underlying action is for breach of contract or where damages sought are purely for economic loss").

### CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment on Count Six of Plaintiffs' Second Amended Complaint, and on each of Defendants' Counterclaims.

Respectfully submitted,

**BELL, SHIVAS & FASOLO, P.C.**


By: /s/ Valerie Fasolo

Valerie Fasolo, Esq.
(vfasolo@bsflawgroup.com)
David T. Shivas, Esq.
(dshivas@bsflawgroup.com)
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey 07866
Tel.: 973-442-7900
Fax: 973-442-7990

*Attorneys for Plaintiffs*
Peter Wengryn, Laila Sayad
and Gerry Louw

Dated: March 27, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment to be served on Defendants on this date by having same delivered via e-mail, and regular mail, to Defendants' counsel at the following address:

> Eric M. Creizman, Esq.
> Creizman LLC
> 565 Fifth Avenue, 7th Floor
> New York, New York  10017
> *Attorneys for Defendants*

In addition, I electronically filed the foregoing using the Court's CM/ECF system, which will also send a notice of electronic filing to Mr. Creizman.


Dated:  March 27, 2015

### BELL, SHIVAS & FASOLO, P.C.


By: /s/ Valerie Fasolo

   Valerie Fasolo, Esq.
   (vfasolo@bsflawgroup.com)
   150 Mineral Springs Drive
   P.O. Box 220
   Rockaway, New Jersey 07866
   Tel.: 973-442-7900
   Fax: 973-442-7990

   *Attorneys for Plaintiffs*
   Peter Wengryn, Laila Sayad
   and Gerry Louw