UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETER WENGRYN, LAILA SAYAD, and :
GERRY LOUW :
                                     : Index No. 13-CV-4556 (KBF)
           Plaintiffs, :
                                      :
      v. :
                                        :
AMERICAN BUSINESS CONSULTANT GROUP :
HOLDING, LLC, J. MICHAEL KAFES, DENNIS :
LEE, and PROVISION CONSULTANTS :
CORPORATION :
                                        :
          Defendants. :
                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS AMERICAN BUSINESS CONSULTANT GROUP HOLDING,
LLC, J. MICHAEL KAFES AND DENNIS LEE'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Eric M. Creizman (EC-7684)
Caroline J. Polisi (CP-5655)
CREIZMAN PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.:  (212) 972-0200
Fax:  (646) 200-5022
Email: ecreiz@creizmanllc.com

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES……………………………………………………..ii

PRELIMINARY STATEMENT ...................................................................3

STATEMENT OF FACTS.............................................................................4

ARGUMENT………………………………………………………………..8

  I.   Plaintiffs Are Not Entitled to Summary Judgment on Plaintiffs' Breach of Written Employment Contract Claim ...................................................... ……9

  II.   Plaintiffs Are Not Entitled to Summary Judgment on Defendants' Counterclaim of Breach of Contract………………………………………………………… 14

  III.  Plaintiffs Are Not Entitled to Summary Judgment on Defendants' Counterclaim of Implied Indemnity Against Peter  Wengryn ……………..................................15

CONCLUSION .......................................................................................... 16

<u>**Table of Authorities**</u>

**CASES**

*Vivenzio v. City of Syracuse,*
    611 F. 3d 98, 106 (2d Cir. 2010)……………………………………………………9,10

*McClellan v. Smith,*
    439 F. 3d 137, 144 (2d Cir. 2006)……………………………………………………9, 10

*Ideal Steel Supply Corp. v. Anza,*
    652 F. 3d 310, 326 (2d Cir. 2011)……………………………………………………10

*Noise In Attic Prods., Inc. v. London Records,*
    10 A.D.3d 303, 782 N.Y.S.2d (N.Y. App. Div., 1st Dep't 2004)……………....…….11

*SCS Recovery Corp. V. Daido Steel Co., Ltd.,*
    No. 94 Civ. 9214 (LAP), 2000 WL 134578 (S.D.N.Y. Feb. 4, 2000)…………….…...11

*Merrill Lynch & Co, Inc. v. Allegheny Energy, Inc.,*
    500 F.3d 171 (2d Cir. 2007)…………………………………………………...……11

*Jafari v. Wally Findlay Galleries,*
    741 F. Supp. 64 (S.D.N.Y. 1990)……………………………………………………11,12

*New York Anhydrous Ammonia Dev. Corp. v. Ciba-Geigy Corp.,*
    541 N.Y.S. 2d 530 (2nd Dept. 1989)……………………………………….…....…12

*Gillman v. Chase Manhattan Bank, N.A.,*
    73 N.Y.2d 1, 537 N.Y.S 2d 787 (1988) …………….…………………….….…....…14

Defendants American Business Consultant Group Holding, LLC, J. Michael Kafes, and Dennis Lee (the "ABC Group Defendants"), by their undersigned attorneys, Creizman PLLC, respectfully submit this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment.

## PRELIMINARY STATEMENT

The partial summary judgment motion submitted by Plaintiffs represents a herculean effort to paint the picture of three colleagues unwittingly duped into signing employment contracts with a company that was unable to pay them. In reality, Defendants were the ones who were duped. Plaintiff Peter Wengryn *knowingly* and *willfully* entered into a business arrangement with a company that he knew was not fully funded, persuaded its management to hire his friends and former colleagues even amidst ABC Group's hesitation, and used his superior business acumen to take advantage of Defendants' naiveté by *drafting himself* clearly inequitable – indeed, unconscionable – employment contracts, the fulfillment of which he knew was impossible. In essence, Plaintiffs – each seasoned corporate executives – leveraged the fact that Defendants were unsophisticated business people who desperately needed Plaintiffs corporate contacts, to extract as much personal benefit as they could, all the while knowing that the small start-up could not possibly afford their services or benefit from them. For three months, Plaintiffs represented that they were working on a business plan for the company, yet they did not consult with the advisor (who founded the company and created the business idea), did not reach out to any of their corporate contacts, and drained the company of its

3

meager savings, forcing the company into debt.  Plaintiffs have already been paid for the time they spent working at ABC Group.  What they now seek is *full payment* on the duration of their contracts, *for time they did not work at the company*, with no mention of their efforts to mitigate damages.  As set forth in Defendants' response to Plaintiffs' Rule 56.1 Statement, there are clearly genuine issues of material fact in dispute that are directly relevant to the claims in this case.  As such, Plaintiffs' motion for partial summary judgment should be denied.

### STATEMENT OF FACTS

Plaintiffs' lawsuit arises from an acrimonious employment relationship -which lasted all of six weeks- between Plaintiffs and Defendants American Business Consultant Group Holding, LLC ("ABC Group"), including members of ABC Group's Board of Directors, Defendant J. Michael Kafes and Defendant Dennis Lee.  Mr. Kafes is President of the Board of Directors of ABC Group, and Mr. Lee is an Advisor to the Board of Directors of ABC Group.

In or about September 2012, members of ABC Group, a small start-up company, were looking for a CEO who could get the company up and running and bring with him or her a significant rolodex of contacts from previous business experience, and essentially to "be the public face of the company."  *See* Kafes Tr. 192:21.  Peter Wengryn applied for the position and subsequently began negotiations for employment with ABC Group through Mr. Kafes and Mr. Lee.  During the course of negotiating, Mr. Wengryn represented that he had numerous business contacts in the area, and that if hired, he

4

would *immediately* reach out to them in order to get business for the company.  *See* Kafes Tr. 193; 181:15-25; 193:1-7.  This sounded perfect to Mr. Lee and Mr. Kafes, who had little to no experience in the industry.  Because of these representations, ABC Group very much wanted to hire Peter Wengryn.  As a condition of his employment, however, Mr. Wengryn convinced ABC group to hire his two friends and former colleagues, Laila Sayad and Gerry Louw, even though he knew that ABC group did not have sufficient funds to to support their salaries and benefits.  *See* Kafes Tr. 105-107.  *See also* Letter dated December 6, 2012 to Laila Sayad from the ABC Group Board of Directors, attached to Creizman Affidavit as Exhibit B.  Mr. Wengryn explained that this team was integral to ABC Group's success and that only with them could the company become profitable.  Mr. Kafes *explicitly* told Mr. Wengryn that ABC Group did not have the funds to pay these salaries.  *See* Kafes Tr.107:4.   Wengryn still insisted.  Ultimately, believing that he was owed a large sum of money which he would receive very soon, Mr. Kafes and ABC Group decided that Mr. Wengryn was too good an opportunity to pass up, and that they should agree to whatever terms he wanted.  Mr. Wengryn handled most of the negotiations with Sayad and Louw thereafter, except that Mr. Kafes *specifically* told Plaintiffs Sayad and Louw that ABC Group did not have the money to pay their salaries.  *See* Kafes Tr. 110: 1-8.  In fact, on a conference call on September 19, Ms. Sayad said she needed assurances from ABC Group because she was going to quit her job, and Mr. Kafes *still* told her that he did not yet have the available funding.  *See* Kafes Tr: 110: 9-20.  Undeterred, Mr. Wengryn drafted each employment agreement.  On September 6, 2012, Peter Wengryn sent an email to Mr. Kafes, the "sales" group at ABC and cc'd Ms. Sayad and Mr. Louw, the subject of which was "re: employment

agreements."  In that email, Mr. Wengryn wrote: "Enclosed is the first draft of the employment agreement . . .The agreement is for Gerry louw, but I will make a replicate of the agreement for all of us once I receive your comments."  Thereafter he writes: "Dennis – Sorry I did not call you back this evening.  I will call you in the morning." *See* Creizman Decl., Ex. A.  On or about September 13, 2012, Mr. Kafes sent an email to Mr. Wengryn in which he extended the contracts written by Mr. Wengryn, and agreed to by ABC Group, on behalf of ABC Group, to Mr. Wengryn, Ms. Sayad and Mr. Louw.

Ultimately, Laila Sayad and Gerry Louw accepted employment with ABC Group and Ms. Sayad resigned from her then current employment apparently based upon the representation from Michael Kafes that he would personally fund (as an investor) ABC Group with a capital investment of one million dollars, if he in fact received it.  *See* Kafes Tr. Page 114-115 lines 5-24.   After signing the employment contracts, knowing the company had very little money, Mr. Wengryn volunteered not to be paid in order for Mr. Louw and Ms. Sayad to receive their salaries in a timely matter.  *See* Kafes Tr. 187: 8-15.  Thereafter, Mr. Kafes funded the salaries of Ms. Sayad and Mr. Louw for at least three pay periods. *See* Kafes Tr. 187.

Six weeks later, things started going south, after Plaintiffs' first presentation to the Board.  As Mr. Kafes described in his deposition:

> Before they were hired, Peter gave me the impression, and he gave it to Alison and Dennis, that he, Laila, and Gerry were going to go out to their contacts and solicit business pretty much immediately after they were hired.  Six weeks later, we got this business plan.  The contacts haven't been gone to . . . the projected revenues are absurdly low . ."
> *See* Kafes Tr: 182:14-25.

Indeed, The business plan presented by Plaintiffs "went against [their] prior mutual understanding" *See* Kafes Tr.182:17-18.  The board unanimously decided the business plan was unacceptable.  *See* Kafes Tr. 190.  At their next meeting, the Board decided that Plaintiffs were not meeting the standards of employment: "They weren't more aggressive in going out and getting business for the company, and they weren't – they weren't being cooperative with our advisor, who was – they weren't following the plan we had set forth for them."  Indeed, while Mr. Wengryn had represented that he would go out and solicit his contacts for business, he did not bring in one single investor.  *See* Kafes Tr. 193.

On December 5, 2012, ABC Group terminated Plaintiffs' employment.  In a letter written on December 6, 2012, to Laila Sayad, ABC Group noted:

While reviewing the laws your lawyer sent to us . . . we were shocked to discover that perhaps there has been yet another grave injustice inflicted to our company . . .  Peter Wengryn, as a seasoned Chief Executive Officer prior to joining ABC Group, is responsible for and should have known about these labor laws.  Knowing it was against the labor laws, he should never have talked us into hiring you and Gerry Louw until ABC Group had the money in its possession to be able to support your salaries.  Had Mr. Kafes or Mr. Lee who were interviewing Mr. Wengryn known about these labor laws at the time they were negotiating Mr. Wengryn's terms for hiring him, they would not have agreed, at Mr. Wengryn's insistence, to hire the three of you until ABC Group had acquired sufficient funds to be able to support your salaries and benefits. " *See* Creizman Decl., Ex. B.

To date, Defendants have no knowledge of Plaintiffs' efforts to mitigate their damages by seeking employment elsewhere.   ABC Group has paid each Plaintiff the *entirety* of wages due to them from the time they were hired, through their termination on December 5, 2012.  See Creizman Decl., ¶5. Therefore, presently, the *only* outstanding claims for expenses are ones claimed by Mr. Wengryn for unpaid business expenses and for wages accounting for the time period *after termination* of Plaintiffs' employment.

## ARGUMENT

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).  The party seeking summary judgment has the burden of establishing the non-existence of any genuine issue of material fact.  *See, e.g., Vivenzio v. City of Syracuse*, 611 F. 3d 98, 106 (2d Cir. 2010).  All that is required from the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute . . . [that] require[s] a jury or judge to resolve the parties' differing versions of the truth at trial."  *McClellan v. Smith*, 439 F. 3d 137, 144 (2d Cir. 2006) (citation and quotation omitted). Summary judgment is improper "if there is *any* evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party."  *Vivenzio*, 611 F.3d at 106 (emphasis added).  In conducting its analysis as to whether a genuine factual dispute exists, "the court may 'not make credibility determinations or weigh the evidence' and '*must draw all reasonable inferences in favor of the nonmoving party*.'" *Ideal Steel Supply Corp. v. Anza*, 652 F. 3d 310, 326 (2d Cir.

8

2011) (emphasis in original).  Where, as here, a dispute can only be resolved by "[c]redibility assessments, choices between conflicting versions of the events and the weighing of evidence," it is settled that such matters are "matters for the jury, not for the court on a motion for summary judgment."  *McClellan*, 439 F. 3d at 144.


## I. Plaintiffs are not Entitled to Summary Judgment on Plaintiffs' Breach of Written Employment Contract Claim

Questions of fact exist regarding whether or not Plaintiffs ever performed under the contract, thereby precluding an entry of summary judgment on Plaintiffs' breach of written employment contracts claims.  Furthermore, questions of fact exist regarding whether or not Plaintiffs entered into the contracts in good faith, thereby precluding an entry of summary judgment on Plaintiffs' breach of written employment contract claims. Lastly, questions of fact exist as to the unconscionable nature of the contracts – both procedurally and substantively – thereby precluding an entry of summary judgment on Plaintiffs' breach of written employment contract claims.

Under New York law, the elements of a breach of contract claim are 1) the existence of a contract between plaintiff and defendant; 2) performance by the plaintiff; 3) defendant's failure to perform; and 4) damages resulting from such failure to perform. *See Noise In Attic Prods, Inc. v. London Records*, 10 A.D.3d 303, 306, 782 N.Y.S.2d 1,3 (N.Y. App. Div., 1st Dep't 2004). Under New York law, the issue of whether a party has substantially performed on a contract is usually a question of fact and should not be decided as a matter of law.   Several factors should be taken into account when analyzing the question, including "the ratio of the performance already rendered to that

unperformed, the quantitative character of the default, the degree to which the purpose

behind the contract has been frustrated, the willfulness of the default, and the extent to

which the aggrieved party has already received the substantial benefit of the

performance." *CSC Recovery Corp. v. Daido Steel Co., Ltd.,* No. 94 Civ. 9214 (LAP),

2000 WL 134578, *6 (S.D.N.Y. Feb. 4, 2000) (quoting *Hadden v. Consolidated Edison

Co. of New York, Inc.,* 34 N.Y.2d 88, 96, 356 N.Y.S.2d 249, 312 N.E.2d 445 (1974)).

Courts are usually mindful that "[t]he issue of whether a party has substantially

performed is usually a question of fact and should be decided as a matter of law only

where the inferences are certain." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,*

500 F.3d 171, 186–87 (2d Cir.2007) (citing *Anderson Clayton & Co. v. Alanthus Corp.,*

91 A.D.2d 985, 985, 457 N.Y.S.2d 578 (2d Dep't 1983)).  A genuine issue of material

facts exists as to whether or not Plaintiffs *ever* performed at all under the contract – or, if

they did perform, whether or not they did so in good faith.  As such, the issue of

Plaintiffs' performance under the contract – a necessary element of their claim – is very

much in dispute.

It is well established under New York law that a material breach by one party

excuses the other from further performance under the contract.  See, e.g. *Jafari v. Wally

Findlay Galleries,* 741 F. Supp. 64, 68 (S.D.N.Y. 1990).  That is, once a party has

materially breached a contract, the other party is discharged from performing its

obligation.  A material breach occurs when one party fails to perform an essential and

*inducing* feature of the contract.  *See New York Anhydrous Ammonia Dev. Corp. v. Ciba-

Geigy Corp.*, 541 N.Y.S. 2d 530 (2nd Dept. 1989).  Here, there is abundant evidence

establishing that a key inducing feature of the contracts was Plaintiffs' (specifically Peter

Wengryn's) representations that they would immediately reach out to their business
contacts in order to get the company up and running.  Indeed, during the course of
negotiating, Mr. Wengryn represented that he had numerous business contacts in the area,
and that if hired, he would *immediately* reach out to them in order to get business for the
company.  *See* Kafes Tr. 193; 181:15-25; 193:1-7.  However, all the evidence shows that
neither Mr. Wengryn nor the other Plaintiffs reached out to any business contacts.
Rather, they apparently spent very little time devoted to the company, when in fact they
were supposed to use "best efforts" and "full professional time and attention to the
mission, goals and business of ABC" while performing their  "duties and responsibilities
to the best of his abilities in a diligent, trustworthy, professional and efficient manner."
The first and only time Plaintiffs presented to the Board, the business plan presented by
them "went against [their] prior mutual understanding" *See* Kafes Tr.182:17-18.  The
board unanimously decided the business plan was unacceptable.  *See* Kafes Tr. 190.  At
their next meeting, the Board decided that Plaintiffs were not meeting the standards of
employment: "They weren't more aggressive in going out and getting business for the
company, and they weren't – they weren't being cooperative with our advisor, who was –
they weren't following the plan we had set forth for them."  Indeed, while Mr. Wengryn
had represented that he would go out and solicit his contacts for business, he did not
bring in one single investor.  *See* Kafes Tr. 193. As such, a genuine issue of material fact
exists as to Plaintiffs' performance under the contract which requires denial of their
motion for summary judgment.

Finally, questions of fact exist as to the unconscionable nature of the contracts –
both procedurally and substantively – thereby precluding an entry of summary judgment

on Plaintiffs' breach of written employment contract claim.  Under New York law, an unconscionable contract is one "which is 'so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'"  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S 2d 787, 791 (1988) (quoting *Mandel v. Lieberman*, 303 N.Y. 88, 94, citing 1 Corbin on Contracts, Section 128, p. 400).   Generally, to declare a contract unconscionable, the court must find that the contract "was both procedurally and substantively unconscionable when made" *Gillman*, 73 N.Y.2d at 11.  The "procedural element" involves consideration of the contract formation process, and whether the party alleging unconscionability was given a meaningful choice.  Courts focus on "the size and commercial setting of the transaction . . . , whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Gillman*, 73 N.Y.2d at 11.  On the "substantive" side, courts analyze whether the actual terms of the contract "unreasonably favor" the party against whom unconscionability is urged. *Gillman*, 73 N.Y.2d at 12.

Here, the evidence shows that Plaintiff Peter Wengryn drafted each employment agreement and that the terms were clearly more favorable to him and his colleagues than to Defendants.  Furthermore, the evidence establishes that Mr. Wengryn induced Defendants to hire his friends and colleagues.  Mr. Wengryn was a more sophisticated business person than Defendants.  Moreover, Peter Wengryn knew that ABC Group did not have the money to pay any of the Plaintiffs.   Yet as a condition of his employment, however, Mr. Wengryn convinced ABC group to hire his two friends

and former colleagues, Laila Sayad and Gerry Louw, even though he knew that ABC group did not have sufficient funds to support their salaries and benefits.  *See* Kafes Tr. 105-107.  *See also* Letter dated December 6, 2012 to Laila Sayad from the ABC Group Board of Directors, attached to Creizman Affidavit as Exhibit B.  Mr. Wengryn explained that this team was integral to ABC Group's success and that only with them could the company become profitable.  Mr. Kafes *explicitly* told Mr. Wengryn that ABC Group did not have the funds to pay these salaries.  *See* Kafes Tr.107:4.   Wengryn still insisted.  Ultimately, believing that he was owed a large sum of money which he would receive very soon, Mr. Kafes, along with ABC Group, decided that Mr. Wengryn was too good an opportunity to pass up, and that they should agree to whatever terms he wanted.  Mr. Wengryn handled most of the negotiations with Sayad and Louw thereafter, except that Mr. Kafes *specifically* told Plaintiffs Sayad and Louw that ABC Group did not have the money to pay their salaries.  *See* Kafes Tr. 110: 1-8.  In fact, on a conference call on September 19, Ms. Sayad said she needed assurances from ABC Group because she was going to quit her job, and Mr. Kafes *still* told her that he did not yet have the available funding.  *See* Kafes Tr: 110: 9-20.  Undeterred, Mr. Wengryn drafted each employment agreement.  *See* Ex. A to Creizman Declaration.

Under such circumstances, drafting employment agreements with provisions providing that Plaintiffs would be paid for the entirety of the specified period, regardless of whether or not they were laid off, is unconscionable, for many reasons, not the least of which is Mr. Wengryn's *knowledge that the company did not have funds to make the necessary payments*.  There are genuine issues of material fact surrounding the negotiation process between Defendants and Plaintiffs such that a denial of their motion

for summary judgment is warranted.

## II.    <u>Plaintiffs are Not Entitled to Summary Judgment on Defendants' Counterclaim of Breach of Contract</u>

For all the reasons stated above, there are genuine issues of material fact regarding whether or not Plaintiffs breached their employment contracts with Defendants. Plaintiffs and Defendant ABC Group were parties to Employment Agreements in which each Plaintiff agreed to devote best efforts and "full professional time and attention to the mission, goals and business of ABC . . . in a diligent, trustworthy, professional and efficient manner."   Plaintiffs promised Defendants that they would use their best efforts to reach out to viable business contacts in the industry, to complete a business model based on the directives of the ABC Group Board, and to take ABC Group's tenuous financial position into account while conducting business.  Instead, Plaintiffs failed to reach out to any of their former business contacts and created a business model that took none of the Board's explicit directives into account.

As such, Plaintiffs each breached their respective Employment Agreements by:

      a.    failing to perform their duties in a diligent, trustworthy and professional manner; and

      b.    failing to comply with the implied covenant of good faith and fair dealing.

For these reasons and the reasons outlined above, there are genuine issues of material fact that require a denial of Plaintiffs' motion for summary judgment.

**III.      Plaintiffs are Not Entitled to Summary Judgment on Defendants'**
**Counterclaim of Implied Indemnity Against Peter Wengryn**

There are genuine issues of material fact regarding whether or not Peter Wengryn failed to use reasonable care in performing work under his employment agreement with ABC Group.  Furthermore, Mr. Wengryn communicated almost exclusively with Ms. Sayad and Mr. Louw, and he himself made any and all representations to them with respect to their employment relationship with ABC Group.  The failure of Mr. Wengryn to use reasonable care in performance of his duties under his contract and his own misrepresentations to Ms. Sayad and Mr. Louw contributed as a substantial factor in causing each of Plaintiffs' harm.   As such, there are genuine issues of material fact that warrant a denial of Plaintiffs' motion for summary judgment.

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary judgment.

Dated: New York, New York
April 27, 2015

Respectfully submitted,

**CREIZMAN LLC**

By: /s/ Eric M. Creizman

Eric M. Creizman (EC 7684)
Caroline J. Polisi (CP 5655)
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 972-0200
Facsimile: (646) 200-5022
Email: ecreiz@creizmanllc.com
cpolisi@creizmanllc.com

*Attorneys for the ABC Group Defendants*

16