```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
PETER WENGRYN, LAILA SAYAD, and GERRY                              :
LOUW,                                                              :
                                                                   :
                                                                   :
                              Plaintiffs,                          :
                                                                   :
              -v-                                                  :      13-cv-4556 (KBF)
                                                                   :
AMERICAN BUSINESS CONSULTANT GROUP                                 :      OPINION & ORDER
HOLDING, LLC; J. MICHAEL KAFES, in his                             :
official and individual capacity; DENNIS LEE, in                   :
his official and individual capacity; PROVISION                    :
CONSULTANTS CORPORATION; DBA                                       :
PROVISION CORPORATION, LLC; ABC CORPS.                             :
1-10; and JOHN DOES 1-10, in their official and                    :
individual capacities, jointly and severally,                      :
                                                                   :
                              Defendants.                          :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 15, 2015

KATHERINE B. FORREST, District Judge:

This action concerns three employment relationships gone sour. Plaintiffs commenced the action on July 1, 2013 (ECF No. 1), and amended their complaint twice thereafter (ECF Nos. 21, 38 ("SAC")). The operative complaint is the Second Amended Complaint (the "SAC") filed on February 18, 2014. (SAC.)[1] While plaintiffs have asserted a myriad of claims, their core claim is that defendants breached each of their employment contracts. This claim is set forth in Count Six.

---

[1] Defendants have not interposed an answer to the SAC, though they answered both the original complaint as well as the initial amendment. (ECF Nos. 10, 22.) The Court notes that defendants asserted two counterclaims in connection with the first answer they filed but not in the second—and they have not answered the SAC at all. As defendants' counterclaims are boilerplate and depend upon the assertions of fact stated elsewhere in their answer (i.e., they are not "standalone" counterclaims), they have arguably been abandoned when not reasserted. Indeed, procedurally it is difficult to see how they could still be "live" if they rely upon statements made in an answer that has now been entirely superceded. Nevertheless, as plaintiffs have not raised this argument, and as these claims fail on the merits in any event, the Court declines to dismiss them for this reason.

Defendants asserted three counterclaims when they answered the initial complaint—cast as claims for breach of employment contracts, "implied indemnity" and "contribution." (ECF No. 10.)

Plaintiffs have now moved for summary judgment as to Count Six and both counterclaims. (ECF No. 75.) For the reasons set forth below, that motion is GRANTED.

I.   A WORD ON SUBJECT MATTER JURISDICTION

Before addressing the motion that is the principle topic of this Opinion, the Court notes that it has concerns regarding the allegations in each of the complaints supporting this Court's subject matter jurisdiction. As the parties are aware, this matter was reassigned to the undersigned on February 24, 2015, as part of a routine, intra-district redistribution of business. The Court therefore cannot know whether the issues it perceives were addressed and resolved long ago (if so, such resolution is not reflected on the docket). Needless to say, it would be inefficient to explore these issues now. The face of the complaint alleges jurisdiction—and that is sufficient for current purposes.

The issue is this: The initial complaint as well as both amendments have asserted federal jurisdiction pursuant to the Fair Labor Standards Act (the "FLSA")—alleging claims for wage and hour violations as to one of the three plaintiffs, Peter Wengryn. (E.g., SAC ¶¶ 15, 120-26.) It does not appear that—based on his employment position and responsibilities—Wengryn can in fact pursue a wage and hour claim under the FLSA. He is the quintessentially exempt employee pursuant to FLSA's bona fide executive exception. See 29 U.S.C.

§ 213(a)(1); 29 C.F.R. §§ 541.100(a), 541.102, 541.700(a).  In addition, there is no separate basis for federal jurisdiction alleged as to the other two plaintiffs (though under appropriate circumstances this Court might be able to assert pendent jurisdiction).  Thus, even assuming that Wengryn does have a cognizable wage and hour claim, there is no necessary reason why the claims of the other two plaintiffs must be joined in the same action with his.  This appears to be a case in which a slim reed supporting federal jurisdiction was found as to Wengryn and the claims of the other two plaintiffs were tacked on.

## II.     FACTUAL BACKGROUND[2]

On September 19, 2012, each of the three plaintiffs agreed to accept employment with defendants and entered into written employment contracts effective as of October 1, 2012.  (Certification of Valerie Fasolo, ECF No. 96 ("Fasolo") exs. A-8, A-14, A-15; see also DRSOF ¶ 1.)  Wengryn was hired to be the Chief Executive Officer ("CEO") of American Business Consultant Group Holding LLC d/b/a ABC Group.  (Fasolo ex. A-8.)  Plaintiff Laila Sayad was hired to fill the

---

[2] The following facts are taken from the Local Rule 56.1 statements submitted by the parties in connection with this motion for summary judgment and their supporting materials.  (ECF Nos. 76, 87 ("DRSOF"), 95.)  The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible.  See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004).

Defendants' response to plaintiffs' 56.1 statement repeatedly states that they "deny" certain facts—but there is a near total absence of any basis for such denial.  The law is clear that such unsupported assertions are insufficient to create a triable issue of fact, and are therefore insufficient to defeat summary judgment.  See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

position of Chief Financial Officer ("CFO") and Gerry Louw was hired to fill the position of Chief Technical Officer ("CTO"[3]).  (Fasolo exs. A-14, A-15.)

Each of the employment agreements provides for a base salary, standard health benefits and eligibility for an incentive bonus.  (Fasolo exs. A-8 ¶ 4, A-14 ¶ 4, A-15 ¶ 4.)  Each agreement contains similar termination provisions providing for termination with or without cause.  (Fasolo exs. A-8 ¶ 3, A-14 ¶ 3, A-15 ¶ 3.)  In the event of termination without cause, each plaintiff is entitled to receive certain compensation including the "remaining amount of salary, benefits and bonuses due through the end of this six month agreement."  (Fasolo exs. A-8 ¶ 6(c), A-14 ¶ 6(c), A-15 ¶ 6(c).)  "Cause" is defined similarly in each agreement as any material breach of the employment agreement, any material failure to comply with written company policies or rules, continued failure to perform material duties after having received a written warning and 30-day period to cure, a criminal conviction, misappropriation of funds, or gross or willful misconduct resulting in a material loss to the company or material damage to the reputation of the company.  (See Fasolo exs. A-8 ¶ 6(e), A-14 ¶ 6(e), A-15 ¶ 6(d).[4])

In addition, each employment agreement contains a standard integration clause providing that:

> This Agreement embodies the complete agreement and understanding among the parties hereto and supercedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral,

---

[3] Louws' agreement states that he "shall serve as the CIO/CTO."  (Fasolo ex. A-15 ¶ 1.)

[4] Paragraph 6 of Louws' employment contract contains two subparagraphs labeled "d."

4

>which may have related to the subject matter of this Agreement in any way.

(Fasolo exs. A-8 ¶ 12, A-14 ¶ 12, A-15 ¶ 12.)  The terms of Wengryn and Luow's agreements was six months (renewable), and Sayad's was for one year.  (Fasolo exs. A-8 ¶ 2, A-14 ¶ 2, A-15 ¶ 2.)

Defendants separately requested that Wengryn pay for certain business expenses as to which he was promised reimbursement.  (DRSOF ¶¶ 9, 11.)  In connection with that arrangement, he paid certain health insurance premiums.  (DRSOF ¶ 10.)  Wengryn has set forth additional business expenses for which he seeks reimbursement—and as to which the President of the ABC Group Board of Directors, J. Michael Kafes, has conceded payment is owed.  (DRSOF ¶¶ 12-13.)  (Kafes was Wengryn's immediate supervisor.  (DRSOF ¶ 67.))

Plaintiffs and defendants agree that funding for the company became an issue.  Whether funding was always an issue or became an issue due to unilateral action by Kafes is irrelevant to resolution of this motion.

Plaintiffs were employed by defendants for a period of several months.  During that time, Kafes paid the salaries for Sayad and Louw, and Wengryn agreed to delay his salary payment.  (DRSOF ¶¶ 28, 30-31.)  As of the close of discovery, the defendants had paid salary for the discrete pay periods during which plaintiffs worked at the company.  (DRSOF ¶¶ 57-58.)

Following their commencement of employment on October 1, 2012, plaintiffs prepared a business plan.  (DRSOF ¶ 34.)  On November 8, 2012, they presented this plan to Kafes.  (DRSOF ¶ 34.)  Kafes praised plaintiffs' business plan and

5

commented that it was "well thought out, well presented and thorough." (DRSOF ¶ 35.) Several days later, plaintiffs presented the business plan to the Board of Directors of the ABC Group. (DRSOF ¶ 37.) At his deposition in this matter, while Kafes asserted that the business plan did not ultimately conform to his vision of the company, he conceded that it did not constitute a violation of plaintiffs' employment agreements. (DRSOF ¶ 75.)

On November 15, 2012, Kafes informed plaintiffs that he had decided to withdraw his promise of funding. (DRSOF ¶ 38.) On or about November 20, 2012, defendants sent a document entitled "Official Communication" to plaintiffs; this document contained nineteen conditions to which plaintiffs were required to agree in order for Kafes to "continue with his intention of funding the operation"—as he had promised he would do three months earlier. (DRSOF ¶39.) One of the conditions was that plaintiffs had to agree that they would waive their right to be paid for the time they had already worked, unless and until Kafes' funding arrived. (DRSOF ¶ 40.) Plaintiffs refused to agree to this condition. (DRSOF ¶¶ 43.) Plaintiffs consulted counsel and informed the company that they might be compelled to file a wage and hour claim to collect unpaid wages. (DRSOF ¶ 49.)

Defendants terminated Wengryn's employment on December 5, 2012. (DRSOF ¶ 54.) At his deposition, Kafes was unable to recall why he fired Wengryn, though he recalled that it had been for cause. (DRSOF ¶¶ 64-66.) Kafes testified that a reason for Wengryn's termination was underperformance. (DRSOF ¶ 53.) Plaintiffs Sayad and Louw were terminated "without cause" as they were laid off.

(DRSOF ¶ 55.) Kafes also testified that "Peter [Wengryn] was fired. Laila [Sayad] and Gerry [Louw] were laid off." (DRSOF ¶ 55.)

Defendants concede that they have not paid plaintiffs amounts due for termination without cause. (DRSOF ¶¶ 55, 59, 61, 79.) Louw has calculated that he is owed $62,901; Sayad has calculated that she is owed $167,695; and Wengryn has calculated that he is owed $89,117. (DRSOF ¶¶ 62, 63, 70.)

III.    STANDARD OF REVIEW

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23. In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d

7

Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

IV.  THE LAW OF CONTRACTS

The sole affirmative claim as to which plaintiffs seek summary judgment is breach of contract. Each of the employment agreements states that it is governed by the law of New York. (Fasolo exs. A-8 ¶ 14, A-14 ¶ 14, A-15 ¶ 14.) Under New York law, to establish a breach of contract, a plaintiff bears the burden of demonstrating (1) the existence of a contract, (2) breach, and (3) damages resulting from that breach. Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004).

8

Contracts are enforced according to the plain meaning of their clear terms. Brad H. v. City of New York, 17 N.Y.3d 180, 185 (2011). In a contract dispute, summary judgment may be granted when contractual language is unambiguous, or where there is ambiguity, extrinsic evidence does not raise a triable issue. Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008).

V.  DISCUSSION

Defendants concede—as they must in light of the record—the existence of contracts between the parties. Each plaintiff executed a written employment contract as described above.

In opposition to this motion, defendants have put forward several arguments, each of which lacks merit.

First, defendants assert that while the employment contracts may exist, plaintiffs always knew that the funding to pay them was not in hand. But whether funding was in hand or not does not relieve defendants of a binding contractual obligation to make payments as promised. The employment agreements were not contingent on receipt of funding; they were binding and effective as of October 1, 2012 for the periods stated. Each of the contracts contains an integration clause—prior conversations, if they occurred, are simply irrelevant in the face of such clauses. See Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 599 (N.Y. 1997) ("Courts and commentators addressing the substantive and procedural aspects of New York commercial litigation agree that the purpose of a general merger provision . . . is to require full application of the parol evidence rule in order

9

to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing . . . . (citations omitted)).

Second, defendants argue that plaintiffs failed to perform their obligations, thereby relieving defendants of their need to perform. There is no factual support for this assertion. The record evidence is clear that plaintiffs were hired effective October 1, 2012, prepared a business plan, presented that plan to Kafes, and subsequently presented that plan to the entire Board of Directors. That plaintiffs worked is confirmed by defendants' statement in the "Official Communication" seeking to have plaintiffs waive payment for periods already "worked." In reality, defendants' assertion in this regard amounts to no more than that they were dissatisfied with the substance of plaintiffs' work. But dissatisfaction with work performed undercuts any suggestion that plaintiffs never performed at all. Thus, while, defendants also assert—without factual citation—that there are questions of fact as to whether plaintiffs ever performed. But bald and unsupported assertions are insufficient to avoid summary judgment. See Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003).

Third, defendants assert that plaintiffs have "materially breached" the contract in other ways—such as Wengryn not reaching out to certain business contacts sooner, or that the business plan "went against [their] prior mutual understanding." (ECF No. 89 ("Mem. in Opp'n") at 11.) But these are, at most, assertions of underperformance. To the extent that defendants sought to terminate

Wengryn or any plaintiff for performance, the employment agreement provides that they must provide a written warning and allow for a 30-day cure period. (See Fasolo exs. A-8 ¶ 6(e), A-14 ¶ 6(e), A-15 ¶ 6(d).) Defendants proffer no facts suggestive of such notice and cure period. Indeed, the timing of the events (business plan presentation on November 8 and termination on December 5) run counter to these provisions. Further, each of these performance-based arguments is particularly disingenuous as to Sayad and Louw, who Kafes testified had not been fired for cause but had instead been laid off. (DRSOF ¶ 55.)

Defendants' final fallback position is that the employment contracts are unconscionable. (Mem. in Opp'n at 11-12.) There are no facts before the Court supportive of this theory. Defendants point to the fact that plaintiffs drafted the agreement. That is of no moment. The cover letter accompanying that draft indicates that defendants should review the agreement and make whatever changes they deem appropriate. (Declaration of Eric M. Creizman, ECF No. 88 ex. A.) The agreements are clearly written in relevant part, and thus there is no issue requiring construction against the drafter. Moreover, on their face, the terms of the agreements are eminently reasonable—far from the type of "gross unreasonableness" required to support unconscionability. See In re Lawrence, 24 N.Y.3d 320, 336-37 (N.Y. 2014).

In sum, each of the plaintiffs is covered by a binding and enforceable contract, under which he or she rendered performance. Defendants have concededly

not fulfilled their obligations. Summary judgment on the breach of contract claim is therefore entirely appropriate.

Summary judgment on defendants' counterclaims follows from this determination. As the Court has not found that there is a triable issue as to "cause-based" termination, defendants' claims premised on a breach of the employment agreement must fail. The Court notes that defendants' opposition to this portion of plaintiffs' motion is entirely devoid of any factual citations, which as explained above is insufficient on a motion for summary judgment to raise a triable issue.

## VI. CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judgment is GRANTED. Within **5 days**, plaintiffs should inform the Court as to whether they will voluntarily dismiss the remainder of their claims as redundant and allow for immediate entry of judgment.

The Clerk of Court is directed to close the motion at ECF No. 75.

SO ORDERED.

Dated:    New York, New York
          May 15, 2015

_____
KATHERINE B. FORREST
United States District Judge